COLORADO COURT OF APPEALS                                    **2017COA72**

Court of Appeals No. 16CA1096
City and County of Denver District Court No. 16CV31461
Honorable J. Eric Elliff, Judge

Blooming Terrace No. 1, LLC,

Plaintiff-Appellant,

v.

KH Blake Street, LLC; and Kresher Holdings, LLC,

Defendants-Appellees.

JUDGMENT AFFIRMED AND CASE
REMANDED WITH DIRECTIONS

Division I
Opinion by JUDGE GRAHAM
Taubman, J., concurs
Navarro, J., dissents

Announced May 18, 2017

Reilly Pozner LLP, John M. McHugh, Denver, Colorado, for Plaintiff-Appellant

Moye White LLP, David A. Laird, Jason D. Hermele, Denver, Colorado, for
Defendants-Appellees

¶ 1     When a borrower obtained a large bridge loan to purchase commercial real estate and defaulted, it agreed to pay forbearance fees and related charges.  It paid off the loan in full and then sued the lender for usury.  Blooming Terrace No. 1 LLC (Borrower) now appeals from the district court's order granting the motion to dismiss filed by KH Blake Street, LLC and Kresher Holdings, LLC (referred to collectively as Lender).  Borrower also appeals the district court's award of attorney fees to Lender.  We affirm.

## I.     Background

¶ 2     The bridge financing took place in April 2013.  As set forth in Borrower's complaint, Lender loaned $11,000,000 for an origination fee of $220,000.  The loan was secured by a deed of trust and memorialized by a promissory note (Note) that contained an accrual interest rate of eleven percent per annum, a default interest rate of twenty-one percent per annum, a five percent late charge on any late monthly payments, and a $110,000 exit fee.  Under the Note, Borrower was required to pay a monthly interest payment calculated at the rate of eight percent per annum (based on a 360-

day year),[1] but none of the monthly payments applied to the principal. The Note matured on May 1, 2014.

¶ 3 Borrower defaulted on the Note in April 2014. Lender sent Borrower notices of default on April 2 and again on April 17, 2014. On April 22, 2014, the parties executed a forbearance agreement whereby Lender agreed to forbear until May 1, 2014, from foreclosing on the deed of trust in exchange for a $110,000 forbearance fee plus continued accruing default interest, late charges, and certain additional fees.[2] At the time the parties executed the forbearance agreement, the amount of interest (including default interest), late charges, exit fee, and estimated legal fees then outstanding was $778,583.33.

¶ 4 The loan was not paid by May 1, 2014. The parties then amended the forbearance agreement on May 13, 2014, whereby Borrower agreed to pay Lender a total forbearance fee of $220,000 to extend its obligation to repay the loan until 1 p.m. on May 16,

---

[1] For example, for a 30-day month, the payment would be $73,333.33 (($11,000,000 x .08 = 880,000)/360 = $2444.44 per day x 30 days = 73,333.33).
[2] Some of these additional fees were attorney fees and costs associated with enforcing the Note. Borrower did not itemize those fees in the complaint and does not identify them in its brief.

2014.  On May 15, Borrower paid off the loan including all outstanding interest, fees, and costs.  Borrower does not identify the exact amount of payoff in its complaint.

¶ 5　　Borrower sued Lender claiming the fees, interest, costs, and expenses payable "for the forbearance period and the amended forbearance period" exceeded the forty-five percent per annum interest allowable under Colorado's usury law, section 5-12-103, C.R.S. 2016.  However, Borrower's first claim for relief incorporates all prior allegations in the complaint and those allegations include the entirety of the loan transaction, not just the forbearance period.  Borrower also brought a claim for unjust enrichment based on the usury allegation.

¶ 6　　Lender filed a C.R.C.P. 12(b)(5) motion to dismiss, arguing that the loan fees charged did not constitute interest above the maximum allowable rate.  The district court agreed, concluding that the effective rate of interest for the loan was 12.924 percent based on the total amount of interest charged during the life of the loan.[3]

---

[3] The district court computed $1,507,333.5 in total interest payments over the life of the loan (387 days) and then converted the daily rate to a per annum rate applied against the principal amount

3

Because the interest was not usurious, the court dismissed the complaint in its entirety.

¶ 7 Lender then sought attorney fees pursuant to Section 14.c of the Note, which required Borrower to reimburse Lender "for any costs, including but not limited to, reasonable attorneys' fees . . . incurred in . . . pursuing or defending any litigation based on, arising from, or related to any Loan Document." The district court awarded attorney fees to Lender in the amount of $15,407.20.[4]

## II. Usury

### A. Standard of Review

¶ 8 We review de novo a district court's grant of a motion to dismiss. *Miller v. Bank of N.Y. Mellon*, 2016 COA 95, ¶ 15.

¶ 9 A motion to dismiss under C.R.C.P. 12(b)(5) for failure to state a claim tests the formal sufficiency of a plaintiff's complaint. *Dwyer v. State*, 2015 CO 58, ¶ 43. To survive summary dismissal for failure to state a claim under C.R.C.P. 12(b)(5), a party must plead sufficient facts that, if taken as true, suggest plausible grounds to

---

of the loan (($1,507,333.53/387 = 3,894.919/day) x 365 = 1,421,645.32/year)/$11,000,000 = .12924 x 100 = 12.924%.

[4] The court also awarded costs in the amount of $244.31 to Lender. Borrower does not appeal the costs award.

support a claim for relief. *Warne v. Hall*, 2016 CO 50, ¶ 24 (adopting a heightened standard of pleading in Colorado that requires a complaint to allege plausible grounds for relief, not merely speculative grounds). In reviewing a trial court's ruling on a C.R.C.P. 12(b)(5) motion, we accept the material factual allegations in the complaint as true and view them in the light most favorable to the nonmoving party. *Id.*

## B. Usury Statute

¶ 10 Interest is compensation for the use, detention, or forbearance of money or its equivalent. *Stone v. Currigan*, 138 Colo. 442, 445, 334 P.2d 740, 741 (1959). "If there is no agreement or provision of law for a different rate, the interest on money shall be at the rate of eight percent per annum, compounded annually." § 5-12-101, C.R.S. 2016.

¶ 11 Under section 5-12-103(1), "[t]he parties to any . . . promissory note . . . may stipulate therein for the payment of a greater or higher rate of interest than eight percent per annum, but not exceeding forty-five percent per annum, and any such stipulation may be enforced in any court of competent jurisdiction in the state."

> The rate of interest shall be deemed to be excessive of the limit under this section only if it could have been determined at the time of the stipulation by mathematical computation that such rate would exceed an annual rate of forty-five percent when the rate of interest was calculated on the unpaid balances of the debt on the assumption that the debt is to be paid according to its terms and will not be paid before the end of the agreed term.

*Id.*

### C. *Dikeou v. Dikeou*

¶ 12    In 1996, the Colorado Supreme Court decided *Dikeou v. Dikeou*, 928 P.2d 1286 (Colo. 1996). *Dikeou* addressed whether a late payment charge in a nonconsumer loan was interest or an unenforceable penalty under *Perino v. Jarvis*, 135 Colo. 393, 312 P.2d 108 (1957).

¶ 13    In *Dikeou*, a creditor loaned $900,000 secured by a promissory note in which the debtor agreed to pay interest of $9,750 per month, or 13% per annum, with the entire principal due and payable in a balloon payment on the note's maturity date. 928 P.2d at 1287. The note provided that late payment charges in the amount of $700 per day would accrue on payments more than one day late. *Id.* The debtor failed to make numerous payments, and

ultimately the creditor demanded payment of both the note in full and the late charges, calculated at a rate of $413.33 per day. *Id.* The creditor filed suit to enforce the note, and while the district court entered judgment in the creditor's favor on the principal amount of the note, the district court "refused to enforce the daily late charge provision based on its conclusion that the late charges bore 'no relationship . . . to any possible damage' that the creditor might have suffered due to the debtor's failure to repay the note according to its terms." *Id.* at 1287-88. The court of appeals affirmed and the supreme court reversed, concluding that a default interest rate is enforceable and reasonable when it is less than forty-five percent.

¶ 14    *Dikeou* first concluded that late charges were interest for purposes of the usury statute. *Id.* at 1293. The supreme court also interpreted the usury statute to require that a default interest rate or late charge be applied retrospectively in order to avoid the literal reading of the statute. The statute's provision that a "rate of interest shall . . . be excessive . . . only if it could have been determined at the time of the stipulation . . . that such rate would exceed an annual rate of forty-five percent . . . on the unpaid

balances" would seem to require that the interest rate could only be computed by looking forward from the date of the agreement. § 5-12-103(1). According to the supreme court, however, this would be an absurd result because the effective rate of default interest can never be computed at the outset. Obviously, no one could anticipate the length of a default and the amount of late fees at the outset of a loan when all parties anticipate timely payments. The supreme court therefore held that for nonconsumer loans, "the applied *per annum* rate [of default interest], when added to the initial rate charged on the outstanding principal" must be less than forty-five percent. *Dikeou*, 928 P.2d at 1295 (emphasis added). The court also concluded that "an *effective* interest rate is retrospectively computed after all forms of interest charges have been assessed." *Id.* at 1294-95 (emphasis added). *Dikeou* does not use the term "annualized." It does, however, offer a partial mathematical computation that appears to annualize the late charge it was considering. Nevertheless, the mathematical computation does not exactly track the *Dikeou* court's explanation that "an *applied* rate of interest that is under 45% is reasonable." *Id.* at 1295 (emphasis added).

¶ 15    Unfortunately, *Dikeou*'s interchangeable use of several terms makes the application of the usury statute in this case difficult. Indeed, the parties here could not agree at oral argument how it should be applied and provided no less than three ways it might be applied to the current circumstances. The difficulty arises from Borrower's contention that the charges during the forbearance period should be *annualized*.[5] By annualizing, Borrower computes a daily charge during the forbearance period and then treats that charge as though it was applied from the outset, during the entirety of the loan. By annualizing the charges during the twenty-four-day forbearance period, an interest charge of over 60% can be computed.

---

[5] Adding to the complexity is the parties' disagreement over how many extensions of credit were involved in the loan, with Borrower taking the position that there were three (the loan, and each of the forbearance periods) and Lender suggesting there could be one or two (the loan and the forbearance periods combined or the loan and one forbearance period). We believe, as the district court must have assumed, that there was one extension of credit, modified to allow a late payment. *See* § 5-12-103(2), C.R.S. 2016 ("'[I]nterest' as used in this section means the sum of all charges payable directly or indirectly by a debtor and imposed directly or indirectly by a lender as an incident to or as a condition of *the extension of credit to the debtor . . . .*") (emphasis added).

9

¶ 16    But applying *Dikeou*'s ruling that an effective rate of interest should be applied to all charges retrospectively does not appear to require that we annualize the charges in the forbearance period in this case.

## D.    Application of Interest

¶ 17    In this case, Borrower urges us to annualize the forbearance charges.  In doing so, we would be required to compute a daily rate during the forbearance period and then apply that daily rate to the entire lending period of the loan, treating the daily charge as though it had been charged to Borrower every day for over one year.  In other words, Borrower would seek to add all charges during the forbearance period (yielding a daily charge of $15,495 each day for the twenty-four-day forbearance period) and then annualize that amount by treating it as though it had been charged on an annual basis for the entirety of the lending period (387 days multiplied by $15,495 = $5,996,565).

¶ 18    In sharp contrast to this application of interest, the district court measured the interest charged on a purely per annum rate based on the entire amount of interest charged over the *life of the*

*loan* (387 days) without using a daily rate for the forbearance period.

¶ 19    Section 5-12-103 and our understanding of *Dikeou* require that we determine whether the effective interest rate is usurious by retrospectively applying it to the entire principal over the life of the loan.  Borrower's computation would treat the actual interest charged as though it had been charged at the same rate for the entire period of the loan.  In our view, that would not accurately reflect the rate of interest charged during the forbearance period nor would it accurately apply a per annum rate retrospectively.

¶ 20    Based upon the complaint and the exhibits attached to it, we conclude that, although the district court did not accurately apply all of the charges as contemplated by *Dikeou*, its conclusion that the interest charges were not usurious was nevertheless correct and the complaint failed on its face to allege a claim for which relief could be granted under the usury statute.[6]  *See People v. Chase*, 2013 COA 27, ¶ 17 ("[W]e may affirm a trial court's ruling on

---

[6] Consequently, the unjust enrichment claim fails as well.

11

grounds different from those employed by that court, as long as they are supported by the record.").

¶ 21    Here, the record and the allegations of the complaint establish the following amounts of interest, default interest, and forbearances charges paid by Borrower on the $11,000,000 principal loan:

- $220,000 origination fee;

- $220,000 total forbearance fee;

- $110,000 exit fee;

- $1,200,000 per annum interest at 11%;

- $90,410.95 default interest to May 1, 2014;

- $96,250 default interest for May 2014; and

- $366.66 5% late fee on April payment.

Total interest and related charges amounted to $1,937,027.61.

¶ 22    On an applied per annum basis, these charges amount to an interest rate of 17.60%.[7]

---

[7] We recognize that the district court found total interest and charges to be a smaller number and calculated a per annum applied interest rate of 12.924%. Based upon our review of the complaint, the Note, and the forbearance agreements, we conclude that the district court overlooked some of the charges. But this difference does not alter the district court's correct conclusion that the Note and forbearance agreements were not usurious.

¶ 23    Of course, the difference between our calculation and Borrower's is that Borrower seeks to annualize the forbearance fees over the entire loan period, effectively applying them at fifteen times their applied rate rather than on a per annum basis. We decline the invitation to apply the fees on any basis other than a per annum basis. *See Dikeou*, 928 P.2d at 1294-95.

### III.    Attorney Fees

### A.    Contractual Fee Shifting

¶ 24    Borrower next contends the district court erred in granting attorney fees under the terms of the Note. We disagree.

¶ 25    We review a district court's interpretation of a contractual fee-shifting provision de novo. *S. Colo. Orthopaedic Clinic Sports Med. & Arthritis Surgeons, P.C. v. Weinstein*, 2014 COA 171, ¶ 8. We review an award of attorney fees and costs for an abuse of discretion. *Id.*

¶ 26    Colorado courts follow the American rule, which requires parties to a lawsuit to pay their own legal expenses. *Id.* at ¶ 10. An exception to this rule occurs when the parties agree in a contract clause (often known as a fee-shifting provision) that the prevailing party will be entitled to recover its attorney fees and costs. *Id.*

¶ 27    The Note states that "[i]mmediately upon Lender's demand, Borrower shall reimburse Lender for any costs, including but not limited to, reasonable attorneys' fees . . . incurred in . . . pursing or defending any litigation based on, arising from, or related to any Loan Document."  Neither forbearance agreement contains a similar fee-shifting provision.

¶ 28    The Note defines "Loan Documents" as "[t]his Note and all other documents now or hereafter evidencing, securing, or relating to the Loan or any subsequent modification of the Loan" and specifies that the list of Loan Documents includes, but is not limited to, the deed of trust, security agreement, and fixture filing; assignment of leases and rents; continuing unlimited guarantee by guarantor; an environmental indemnity agreement; Borrower's closing affidavit; and UCC-1 financing statements.

¶ 29    The district court concluded that Lender was entitled to attorney fees because (1) both forbearance agreements were Loan Documents because they were "documents . . . relating to the Loan"; and (2) even if the forbearance agreements were not Loan Documents, the litigation in the case was "related to" the Note — a Loan Document as defined in the Note.

¶ 30　　Assuming without deciding that Borrower is correct in arguing that the forbearance agreements were not Loan Documents under the terms of the Note because the forbearance agreements expressly restrict the term Loan Documents to documents enumerated in the Note,[8] we discern no error in the district court's conclusion that this litigation was "related to" a Loan Document entitling Lender to attorney fees.

¶ 31　　Borrower's argument that because the forbearance agreements were not Loan Documents, the litigation regarding those agreements is not related to any Loan Document is unavailing.  The term "related" is defined as "connected by reason of an established or discoverable relation."  Webster's Third New International Dictionary 1916 (2002).  "We should give an unambiguous fee-shifting provision its plain and ordinary meaning, and we should interpret it in a 'common sense manner.'"  *Weinstein*, ¶ 11 (quoting

---

[8] The original forbearance agreement contained a section titled "Loan Documents; No Merger," which appears to exclude the forbearance agreement from the Note's defined Loan Documents. The forbearance agreement also contains a provision that "[i]n the event of any inconsistency between the provisions of this Agreement and the Loan Documents, the provisions of this Agreement shall control."

*Morris v. Belfor USA Grp., Inc.*, 201 P.3d 1253, 1259 (Colo. App. 2008)).

¶ 32    This litigation concerns the amount of interest charged by Lender under the terms of both the Note and the forbearance agreements.  Indeed, under *Dikeou*, it is necessary to know the initial base interest rate in the Note to reach a conclusion regarding whether the agreement is usurious.  928 P.2d at 1295.  Thus, there was no error in the district court's conclusion that this litigation "related to" the Note and was, therefore, subject to the fee-shifting provision in the Note.

## B.    Reasonableness of Fees

¶ 33    Borrower further contends that the district court abused its discretion in calculating the amount of fees awardable to Lender. We reject this contention.

¶ 34    We afford the district court considerable discretion in determining the reasonableness of attorney fees.  *Weinstein*, ¶ 23. In doing so, courts first calculate a lodestar amount.  *Payan v. Nash Finch Co.*, 2012 COA 135M, ¶ 18.  "The lodestar amount represents the number of hours reasonably expended on the case, multiplied by a reasonable hourly rate."  *Id.*  The district court then has

discretion to make upward or downward adjustments to the lodestar amount based on factors set forth in Colo. RPC 1.5(a). *Weinstein*, ¶ 24.

¶ 35    After careful review, the district court awarded Lender $15,407.20 in fees. The court considered Borrower's arguments that (1) there was no breakdown of what work was done for Lender and for Lender's affiliate; (2) Lender failed to prove the fees were reasonable; (3) counsel provided inadequate explanation for entries; (4) counsel included improper block billing; (5) counsel failed to exercise billing judgment; and (6) counsel's fees were excessive. Our review of the record convinces us that the court rejected each of these contentions after careful consideration and that the district court's ultimate conclusion to award fees was not an abuse of discretion. Regarding apportionment, the district court found, with support, that all the fees were incurred by KH Blake Street on behalf of its affiliate.

¶ 36    Nor are we persuaded by Borrower's argument on appeal that the court placed the burden on it to show Lender's attorney fees were unreasonable. The court in fact accepted Borrower's argument on reasonableness, concluding the court was "unable to

judge the reasonableness of the requested fees based on the information provided," and thus reduced the amount of requested fees.

¶ 37    Accordingly, we do not disturb the district court's findings on fees and costs.

## IV.    Appellate Attorney Fees

¶ 38    Pursuant to Section 14.c of the Note, Lender is entitled to appellate attorney fees.  Pursuant to C.A.R. 39.1, we exercise our discretion and remand to the district court to determine the amount of reasonable attorney fees to be awarded to Lender.

## V.    Conclusion

¶ 39    The judgment is affirmed, and the case is remanded to the district court for a determination of reasonable appellate attorney fees.

JUDGE TAUBMAN concurs.

JUDGE NAVARRO dissents.

JUDGE NAVARRO, dissenting.

¶ 40    Everyone agrees that *Dikeou v. Dikeou*, 928 P.2d 1286 (Colo. 1996), controls the question presented in this case — did Lender charge Borrower usurious interest?  But almost no one agrees on *how* to apply *Dikeou* to this case in order to determine whether the effective interest rate that Lender charged during the forbearance period was usurious.  The parties disagree with each other.  On appeal, both parties disagree with the district court's calculation. The majority disagrees with both parties' calculations as well as the district court's.  Likewise, I disagree with everyone else's calculation.  Perhaps this case presents a good opportunity for the supreme court to clarify *Dikeou*.

¶ 41    For my part, I cannot reconcile the majority's computation of the effective interest rate with the supreme court's calculation in *Dikeou* itself.  So, I respectfully dissent.

¶ 42    The majority accurately discusses the facts of *Dikeou*, and I will not repeat them here.  Based on those facts, the supreme court decided that the flat daily rate of late fees imposed upon default constituted default interest under the usury statute, section 5-12-103, C.R.S. 2016.  *See id.* at 1293.  The court then held that, for

19

nonconsumer loans like the one at issue in *Dikeou*, "a default interest rate is . . . reasonable and enforceable so long as *the applied per annum rate*, when added to the initial rate charged on the outstanding principal, is less than 45% of the unpaid principal balance at the time of the default." *Id.* at 1295 (emphasis added). The court decided that the applied per annum rate imposed by the late fee there was 31.9%. When this rate was added to the initial rate of 13%, the total effective rate during the default period equaled 44.9%, just a hair under the statutory barrier (the creditor's selection of the daily late fee amount was not coincidental). *Id.*

¶ 43 The majority reasons that *Dikeou*'s use of various phrases interchangeably (e.g., "per annum" and "applied rate of interest") makes application of the usury statute to this case difficult. Assuming that is so, the best way to resolve this difficulty — to determine what the supreme court meant by "the applied per annum rate" — is to examine how the court actually applied that key phrase in *Dikeou*.

¶ 44 The supreme court did not show all its mathematical work in *Dikeou*, but we can easily deduce its calculations from the numbers

the court gave us.[1]  To compute the applied per annum rate of default interest, the supreme court started with the interest charged per day during the period of default: the $413.33 late fee.  *Id.*  To translate the daily rate into a "per annum" rate, the court multiplied it by 365 days to arrive at $150,865.45.  The court then divided that amount by $472,764.45, the total unpaid balance at the time of default, to arrive at a default interest rate of 31.9%.  Adding that default interest rate to the original interest rate of 13% resulted in a total effective rate of 44.9%.  *See id.*

¶ 45      I apply the same analysis here.  (Because they are sufficient to show a violation of the usury statute — and thus sufficient to defeat Lender's motion to dismiss — I consider only the forbearance fee and the interest imposed by the original loan document during the forbearance period, not any other fee.)  The total forbearance period covered 24.5 days; on this point I agree with both the majority and Lender.  The total forbearance fee was $220,000, which converts to

---

[1] The supreme court identified the daily late fee ($413.33), the unpaid balance of the loan at the time of default ($472,764.45), the resulting default interest rate (31.9%), the initial interest rate (13%), and total effective rate during the default period (44.9%).  *Dikeou v. Dikeou*, 928 P.2d 1286, 1295 (Colo. 1996).

$8979.59 per day (220,000 ÷ 24.5). Following *Dikeou*, I compute

the per annum rate by multiplying the daily rate by 365 to arrive at

$3,277,551.02. Dividing that number by the unpaid principal

balance at the time of default ($11,000,000) results in a default

interest rate of 29.8%. I cannot stop there, though, because the

*Dikeou* court was quite clear that we must add this default interest

rate to the interest rate the original loan document applied to the

unpaid principal during the same forbearance period: 21%. (Here

again, I accept Lender's calculation of the interest rate imposed by

the original loan document after a default.) So, the total effective

interest rate during the forbearance period was at least 50.8%,

which violated the usury statute.

¶ 46    Notably, on appeal Lender calculates the default interest rate

imposed by the forbearance agreement in the same way I do (i.e.,

using the *Dikeou* method), and Lender arrives at the same figure:

29.8%. But Lender declines to add that number to the 21% interest

imposed by the original loan document upon default. As explained,

however, *Dikeou* requires us to combine these interest rates to

determine the effective rate applied to the unpaid loan balance

during the forbearance period. *Id.* *Dikeou* explained that this

22

effective interest rate must be "computed after all forms of interest charges have been assessed." *Id.* at 1294-95. After all, Lender charged both the 21% interest and the 29.8% interest on the same unpaid balance ($11,000,000) during the forbearance period.

¶ 47    Lender suggests on appeal that the original loan document and forbearance agreement might be two entirely separate extensions of credit. But I agree with the majority and the district court that "there was one extension of credit, modified to allow a late payment." *Supra* ¶ 15 n.5 (majority opinion). The forbearance fee was akin to the late charge in *Dikeou*, which constituted "a condition of extending credit after the initial default" and "compensate[d] the creditor for the increased risk and expense of lending money [the creditor] incurred when extending credit to a debtor who already had failed to make timely payments." *Dikeou*, 928 P.2d at 1290.

¶ 48    Indeed, Lender argued in its motion to dismiss in the district court that this case concerns only one extension of credit. Lender explained that "all of the charges paid by [Borrower] (including the Forbearance Fees) were tied to the extension of $11,000,000 in credit to [Borrower]. Accordingly, all of the charges paid

(Forbearance Fees included) were part and parcel of the $11,000,000 Loan." Although Lender seems to retreat from this position on appeal, Lender ultimately agreed at oral argument that it would be fair to characterize the original loan and the forbearance as one extension of credit.

¶ 49 As a result, we must add the 21% interest imposed by the original loan document upon default to the 29.8% default interest imposed by the forbearance agreement. Because the total effective interest rate of 50.8% during the forbearance period violated the usury statute, I would reverse the judgment dismissing Borrower's claims and reverse the order awarding attorney fees to Lender.

¶ 50 In light of my analysis, I necessarily dissent from the majority's award of appellate attorney fees to Lender.