2017 CO 107

UMB BANK, N.A.; Colorado Bondshares— A tax exempt fund; and Marin Metropolitan District, a Colorado Special District, Petitioners

v.

LANDMARK TOWERS ASSOCIATION, INC., a Colorado nonprofit corporation, by EWP-GV, LLC, as receiver for 7677 East Berry Avenue Associates, LP, its Declarant., Respondent

Supreme Court Case No. 16SC455

Supreme Court of Colorado.

December 11, 2017

Rehearing Denied January 22, 2018

See also 2014 WL 1254720.

Attorneys for Petitioners: Kutak Rock LLP, Neil Arney, Thomas W. Snyder, Mia K.

Della Cava, Denver, Colorado, McNamara Law Firm, P.C., John N. McNamara, Denver, Colorado.

Attorneys for Respondent: Perkins Coie LLP, Michael L. Bender, Laura Cramer-Babycz, Denver, Colorado, Burg Simpson Eldredge Hersh & Jardine, P.C., Brian K. Matise, Nelson Boyle, Englewood, Colorado.

Attorneys for Amicus Curiae Colorado Association of Home Builders: Icenogle Seaver Pogue, P.C., Jennifer L. Ivey, Denver, Colorado.

Attorneys for Amicus Curiae Colorado Municipal Bond Dealers Association, Inc.: Sherman & Howard L.L.C., Joseph J. Bronesky, Peter J. Whitmore, Denver, Colorado.

Attorneys for Amicus Curiae Colorado Municipal League: Colorado Municipal League, Tami Yellico, Denver, Colorado.

Attorneys for Amicus Curiae Special District Association of Colorado: Butler Snow LLP, Martina Hinojosa, Monica Rosenbluth, Denver, Colorado.

JUSTICE GABRIEL delivered the Opinion of the Court.

¶1 This case involves the establishment and funding activities of petitioner Marin Metropolitan District (the "District"), a special district that was created as a vehicle to finance the infrastructure of a proposed residential community. In late 2007, the organizers of the District held an organization election and approved the creation of the District. At the same time, pursuant to Colorado's Taxpayer Bill of Rights ("TABOR"), the organizers voted to approve the issuance of bonds and to impose property taxes to pay the bonds on landowners within the District.

¶2 A group of condominium owners subsequently learned that their properties had been included in the District under what they believed to be suspicious circumstances and that they had been assessed the above-noted taxes. Acting through their homeowners' association, respondent Landmark Towers Association, Inc., ("Landmark") the owners

brought two lawsuits, one to invalidate the creation of the District and the other (this case) to invalidate the approval of the bonds and taxes and to recover taxes that they had paid to the District, among other things.

¶3 The district court ultimately ordered a partial refund of the taxes paid by the condominium owners and enjoined the District from assessing future taxes on the owners in order to pay its obligations under the bonds. Both sides appealed, and in a published decision, a unanimous division of the court of appeals concluded, in pertinent part, that Landmark's challenge to the bond and tax election was timely and that the election violated TABOR and applicable statutes. Landmark Towers Ass'n v. UMB Bank, N.A., 2016 COA 61, ¶ 4, —— P.3d ——.

¶4 Respondents petitioned for certiorari, and we granted the petition to consider whether Landmark's challenge to the bond and tax election was timely and whether the election was otherwise validly conducted.[1]

¶5 We now reverse. Section 1-11-213(4), C.R.S. (2017), requires a party seeking to contest an election like that present here to file a written statement of intent to contest the election within ten days after the official survey of returns has been filed with the designated election official. The statute further provides, "If a written statement of intent to contest the election is filed more than ten days after the completion of the official survey of returns, no court shall have jurisdiction over the contest." Id.

¶6 Here, it is undisputed that Landmark did not file the requisite written statement until more than three years after the official survey of the election returns was filed. Moreover, pursuant to our decision in Cacioppo v. Eagle County School District Re-50J, 92 P.3d 453 (Colo. 2004), Landmark's challenge was subject to section 1-11-213(4)'s time bar, and because section 1-11-213(4) is a non-claim statute, the equitable estoppel doctrine does not apply.

¶7 Accordingly, we conclude that Landmark's challenge to the bond and tax election at issue was time barred, and thus, we reverse the judgment of the division below and remand for further proceedings. In light of this disposition, we need not reach the other issues on which we granted certiorari.

## I. Facts and Procedural Background

¶8 In 2005, 7677 East Berry Avenue Associates, L.P. ("7677"), which was managed by Zachary M. Davidson, created a development plan for a project that came to be known as the "Landmark Towers." The Landmark Towers would be a combined residential and retail development in Greenwood Village, Colorado.

¶9 Pursuant to an agreement between 7677 and Greenwood Village, 7677 was to be provided with a portion of certain sales tax revenues generated by the businesses occupying the property. Such revenues were offered as an inducement to 7677 to complete public improvements on the project.

¶10 As pertinent here, Davidson also managed Everest Marin, L.P. ("Everest"). Everest sought to construct a project called "European Village," which was to be built directly to the south of the Landmark Towers. Everest did not, however, intend for

1. Specifically, we granted certiorari to review the following issues:
    1. Whether the court of appeals erred in holding that the ten-day period in which to contest an election under section 1-11-213(4), C.R.S. (2016), of the Election Code does not bar the respondents' challenge to the special district's TABOR election in this case.
    2. Whether the court of appeals erred in holding that the thirty-day limitations period in section 11-57-212, C.R.S. (2016), of the Supplemental Public Securities Act does not bar the respondents' challenge to the special district's TABOR election in this case.
    3. Whether the court of appeals erred in holding that the special district's TABOR election in this case was invalid because the special district's organizers' contracts did not make them eligible electors under section 32-1-103(5)(b), C.R.S. (2016), of the Special District Act.
    4. Whether the court of appeals erred in holding that the special district's TABOR election in this case was conducted illegally because the respondents were eligible electors under section 32-1-103(5)(b), C.R.S. (2016), of the Special District Act who did not receive notice of the election as required under TABOR.

European Village to provide for its own infrastructure. Instead, Everest intended to form a special district that would issue general obligation or revenue bonds to finance the infrastructure. Because Davidson recognized that the European Village project would not have been viable without the assessed value and the taxes on the Landmark Towers, he decided to incorporate the Landmark Towers into the then-proposed District.

¶11 Prior to the creation of the District, approximately 130 people had signed contracts to purchase condominiums in the Landmark Towers, although none had proceeded to closing. In connection with these contracts, the purchasers had paid substantial, non-refundable deposits.

¶12 At the time the condominium owners signed their contracts, Everest had planned to form the District, but Davidson, who, as noted above, was also developing the Landmark Towers, did not tell any of the purchasers about Everest's planned District. Indeed, when some of the condominium owners expressly inquired about the existence of any special districts, Davidson and his colleagues responded that no special districts were applicable to the owners' property.

¶13 In order to form the District, Everest sought approval of a service plan from the Greenwood Village City Council. After Greenwood Village representatives inquired as to why the Landmark Towers should be incorporated into the District, an Everest representative falsely responded that Davidson and his associates had gone back to the Landmark condominium buyers and confirmed their approval of and support for the District's creation. Similarly, Davidson falsely told the city council that "the buyers" were aware at the time of purchase of the then-proposed District's mill levy. Having heard this and other testimony, Greenwood Village approved the District's service plan.

¶14 TABOR then required an election in order to approve the debt and related taxes. Colo. Const. art. X, § 20(4). To create eligible voters for this election, Everest contracted for purchase options on portions of a so-called "director's parcel" with six individuals connected to Everest, including Davidson.

The District then held an election in which the six people under contract for portions of the ten-foot by ten-foot director's parcel approved, among other things, authorizing up to $35,500,000 in bonds to finance the European Village infrastructure. The voters also approved taxes on all owners within the District in order to secure the repayment of those bonds. The District then issued $30,485,000 in bonds under a trust indenture between the District and petitioner UMB Bank, N.A., acting as trustee.

¶15 Shortly after the approval of the District and the issuance of bonds, Davidson began to misuse certain of the bond funds. Everest ultimately never constructed any of the infrastructure that was to serve European Village. Moreover, both 7677 and Davidson eventually filed for bankruptcy, Davidson was indicted for misuse of public funds and embezzlement, and he subsequently committed suicide.

¶16 The condominium owners closed on their homes in 2008. At that time, they had only minimal, if any, information about the possibility of a future special district, notwithstanding the fact that the District had already been formed and the bonds had been issued. 7677 did not inform the condominium buyers about either the existence of the District or the related tax assessments.

¶17 Subsequently, in 2009, the condominium owners received their tax bills, and some found that their property taxes were unexpectedly high. Several owners inquired about why their tax bills were unexpectedly high, and they learned, for the first time, of the existence of the District. They also learned that approximately half of their tax bills were attributable to the taxes levied by the District.

¶18 Two years later, Landmark, acting on behalf of its member owners, filed the current action, seeking relief from the bond and tax election, as well as other claims not now before us. In connection with these claims, Landmark later argued that because it received no benefit from the creation of the District, the tax assessment made by the District was illegal and violated the owners' due process rights.

¶19 The matter proceeded to a bench trial, after which the district court issued a lengthy and detailed order reciting extensive findings of fact and conclusions of law. As pertinent here, the court concluded that it had no jurisdiction to decide Landmark's claims regarding the bond and tax election because those claims were barred by the ten-day limitations period set forth in section 1-11-213(4). The court further concluded, however, that Landmark and its owners were entitled to refunds of some of the taxes that they had previously paid to the District. And the court agreed with Landmark that because it had obtained no benefit from the District's formation, it was entitled to a judgment declaring that the tax assessment made by the District was illegal and to an injunction prohibiting assessment and collection of the tax.

¶20 Petitioners appealed, and Landmark cross-appealed. In a unanimous, published opinion, the division did not directly address the grounds for the district court's order. Instead, the division concluded that (1) Landmark's challenges were timely; (2) the District illegally conducted its tax and bond election; and (3) therefore, the District had illegally levied taxes to pay the bonds and was required to refund all illegal taxes paid, and Landmark was entitled to an order enjoining the District from levying any further taxes without proper approval. Landmark Towers Ass'n, ¶ 70.

¶21 We subsequently granted certiorari.

## II. Standard of Review

¶22 The matter now before us involves issues of statutory interpretation. We review such issues de novo. Vallagio at Inverness Residential Condo. Ass'n v. Metro. Homes, Inc., 2017 CO 69, ¶ 16, 395 P.3d 788, 792. In doing so, we look to the entire statutory scheme in order to give consistent, harmonious, and sensible effect to all of its parts, and we apply words and phrases in accordance with their plain and ordinary meanings. Id. When the statutory language is clear, we apply it as written and need not resort to other rules of statutory construction. See id. In addition, when construing a statute, we must respect the legislature's choice of language. Turbyne v. People, 151

P.3d 563, 568 (Colo. 2007). Accordingly, "[w]e do not add words to the statute or subtract words from it." Id. at 567.

## III. Analysis

¶23 We begin by addressing section 1-11-213(4) because if Landmark's claims are untimely, this would dispose of all of the assertions now before us. After concluding that Landmark's election contest claims are time barred under section 1-11-213(4) absent an applicable exception, we proceed to discuss the equitable tolling doctrine and this court's decision in Cacioppo, 92 P.3d 453, which Landmark contends establish pertinent exceptions to section 1-11-213(4)'s time bar.

### A. Section 1-11-213(4)

¶24 Section 1-11-213(4) addresses election contests filed in district courts. This section provides, in pertinent part:

The contestor, within ten days after the official survey of returns has been filed with the designated election official, shall file in the office of the clerk of the district court a written statement of the intention to contest the election, setting forth the name of the contestor, that the contestor is an eligible elector of the political subdivision, the name of the contestee, the office or ballot issue or ballot question being contested, the time of the election, and the particular grounds for the contest. . . . If a written statement of intent to contest the election is filed more than ten days after the completion of the official survey of returns, no court shall have jurisdiction over the contest.

Id. (emphasis added).

¶25 Here, the District's election results were certified on November 12, 2007. Landmark thus had ten days from that date to file its contest. Landmark, however, did not file its initial motion for a temporary restraining order until June 1, 2011, more than three and one-half years after the statutory deadline. Accordingly, absent an applicable exception, Landmark's election contest claims were time barred.

¶26 Landmark does not dispute that its election challenge was filed beyond section 1-

11-213(4)'s ten-day deadline. It contends, however, that two exceptions apply here. First, it asserts that the doctrine of equitable tolling operates to save its untimely claim. Second, relying on this court's decision in Cacioppo, it argues that it has raised substantive claims that are not subject to section 1-11-213(4)'s time limitations. We address each of these arguments in turn.

## B. Equitable Tolling

¶27 The doctrine of equitable tolling provides for the tolling of the statute of limitations when "flexibility is required to accomplish the goals of justice." Dean Witter Reynolds, Inc. v. Hartman, 911 P.2d 1094, 1096 (Colo. 1996). Unlike ordinary statutes of limitations, however, "non-claim statutes are not subject to equitable defenses such as waiver, tolling, or estoppel." Mesa Cty. Valley Sch. Dist. No. 51 v. Kelsey, 8 P.3d 1200, 1206 (Colo. 2000).

¶28 The term "non-claim statute" refers to legislation that "prohibits absolutely the initiation of litigation after a specific period of time." Pub. Serv. Co. v. Barnhill, 690 P.2d 1248, 1251 (Colo. 1984). Because a non-claim statute's temporal provisions are, in effect, conditions on the existence of a right to seek redress, "such a statute prohibits the initiation of litigation after the prescribed date and, therefore, is jurisdictional in effect." Id.

¶29 The question thus becomes whether section 1-11-213(4) is a non-claim statute because if it is, then the equitable tolling doctrine would be inapplicable. We conclude that the statute is a non-claim statute.

¶30 To determine whether the General Assembly intended to create a non-claim statute, as opposed to a statute of limitations, we look to the language used in the provision. Barnhill, 690 P.2d at 1251. Statutory language suggesting that a provision is a non-claim statute includes language stating that (1) the failure to file a claim within the statutory period bars the claim, (2) a timely filing is a condition to the existence of the claim itself, or (3) the failure to file within the statutory period "deprives courts of jurisdiction over such a claim." Id. at 1252.

¶31 Here, section 1-11-213(4) states that courts are without jurisdiction over any election contest filed "more than ten days after the completion of the official survey of returns." Applying the principles set forth above, we thus conclude that section 1-11-213(4) is a non-claim statute and that the doctrine of equitable estoppel does not apply to save Landmark's untimely challenge to the bond and tax election at issue. See Mesa Cty. Valley Sch. Dist., 8 P.3d at 1206 (concluding that the plaintiff's failure to file a notice of claim within the time prescribed by the applicable statute established a jurisdictional bar that could not be overcome by equitable defenses such as estoppel).

## C. Cacioppo

¶32 The question remains as to whether this court's decision in Cacioppo relieves Landmark from section 1-11-213(4)'s time bar. Landmark contends that it does because Landmark "is not merely asserting a technical procedural error but a complete and intentional failure to obtain approval of elector-taxpayers." Landmark asserts that such a claim is substantive and thus not barred under Cacioppo because it "involve[s] the legality or the constitutionality of the ballot issue's substance." We are not persuaded.

¶33 In Cacioppo, 92 P.3d at 456, we reviewed a constitutional challenge to a ballot issue approved by Eagle County voters raising taxes to allow a cost-of-living increase for the Eagle County School District. Nearly four months after the election, the plaintiff filed suit seeking to overturn the election. Id. Specifically, as pertinent here, he contended that both the ballot title and the notice provided to the district's residents violated TABOR. Id. The district, however, responded that the plaintiff's challenges were time barred under section 1-11-203.5, C.R.S. (2017) (governing challenges to the form or content of ballot titles and providing a five-day window to file such challenges). Cacioppo, 92 P.3d at 457. The plaintiff disagreed, contending that the statute was unconstitutional because in addition to prohibiting form and content challenges beyond the five-day

limit, it also restricted ballot title contests that were rooted in the Colorado Constitution, which the plaintiff asserted the statute could not properly do. Cacioppo, 92 P.3d at 463.

¶34 In deciding the timeliness of the plaintiff's challenges, we distinguished between challenges to (1) the form or content of the ballot title, (2) the substance of a ballot issue or ballot question, and (3) the election results. Id. at 463-64, 468-69.

¶35 With regard to the first, we stated that a challenge to the form or content of the ballot title is governed by section 1-11-203.5, which sets a five-day time limit to contest "the order on the ballot or the form or content of the ballot title." Cacioppo, 92 P.3d at 462-63 (emphasis added). Construing that statute, we observed that the statute permissibly limits challenges based on the form or content of the ballot title, whether those challenges were based either on constitutional or statutory requirements. Id. at 463 ("[T]he statute clearly time-bars all contests to the form or content of the ballot title, whether the contest to the form or content is based on statute or the constitution.").

¶36 With respect to the second type of challenge, namely, a challenge to the substance of a ballot issue or ballot question, we first observed that sections 1-11-203.5 and 1-11-213 do not apply to such challenges. Id. at 465, 470 (noting that the question before the court did not involve the "legality or the constitutionality of the ballot issue's substance"). Turning then to the question of what constitutes a challenge to the substance of a ballot issue, we stated:

[T]he contest involves the substance of the ballot issue if, regardless of any contest filed before the election, the ballot issue as approved cannot be upheld under the laws or constitution of the state. If the claim alleges that the ballot issue as passed cannot stand under the laws of this state, it is substantive in nature . . . .

Id. at 465 (citations omitted).

¶37 Lastly, with respect to a challenge to the results of an election, we began by noting that such a challenge is governed by section 1-11-213, which establishes the rules for con-

ducting election contests in district court. Id. at 469. We then made clear that because such a challenge does not involve the legality or constitutionality of a ballot issue's substance but rather "concerns only the means through which election results were obtained," it is subject to section 1-11-213(4)'s time limits. Cacioppo, 92 P.3d at 470. In this regard, we note that section 1-11-213 itself provides guidance as to the type of claim that is covered by that statute. Specifically, section 1-11-213(7) provides for challenges to "the reception of illegal votes or the rejection of legal votes," thus indicating that such challenges concern the means through which the challenged election results were obtained, not the legality or constitutionality of a ballot issue's substance.

¶38 Applying these principles to the case now before us, we conclude that Landmark's claim is not a challenge to the substance of the ballot issue but rather is a challenge to the means by which the election results were obtained: Landmark contends that the bond and tax election at issue should be invalidated because ineligible voters participated in the election and eligible electors did not receive notice of the election and therefore were deprived of the opportunity to participate in it. This is precisely the type of challenge envisioned by section 1-11-213(7), and as noted above, we made clear in Cacioppo, 92 P.3d at 469-70, that such a challenge is properly subject to section 1-11-213(4)'s time bar.

¶39 Accordingly, for the reasons set forth in Cacioppo, 92 P.3d at 469-70, we conclude that Landmark's claim is subject to section 1-11-213(4)'s ten-day time limit and that its challenge to the bond and tax election at issue was therefore time barred.

## IV. Other Claims

¶40 In light of our foregoing disposition, we need not reach the remaining issues on which we granted certiorari. For purposes of providing guidance on remand, however, we note that petitioners have asserted that section 11-57-212, C.R.S. (2017), also bars Landmark's claims. That section provides that no challenge can be brought to "any legislative acts or proceedings in connection with the

authorization or issuance of securities by a public entity" more than thirty days after the authorization of the securities. To the extent that petitioners assert that this statute applies to Landmark's challenge to the TABOR election, we need not address that issue because we have concluded that the same claims are barred by section 1-11-213(4). To the extent that petitioners contend that any other claims asserted by Landmark are barred by section 11-57-212, however, we express no opinion on that question but rather leave it, in the first instance, to the courts below. See Laleh v. Johnson, 2017 CO 93, ¶ 22 n.5, 403 P.3d 207, 212 n.5 (declining to address an issue not raised in the parties' petitions for certiorari review and on which certiorari was not granted); Mercantile Adjustment Bureau, L.L.C. v. Flood, 2012 CO 38, ¶ 27 n.8, 278 P.3d 348, 357 n.8 (concluding that when this court did not grant certiorari to review a particular issue, it was not properly before the court for consideration).

¶41 Likewise, we leave for the courts below the issues raised but not addressed by the division's opinion, including the question as to whether the District's tax assessment was illegal and in violation of the Landmark owners' due process rights because the owners received no benefit from the assessment. Again, we express no opinion on these issues.

## V. Conclusion

¶42 For these reasons, we conclude that Landmark's challenge to the bond and tax election in this case was time barred under section 1-11-213(4). Accordingly, we reverse the judgment of the court of appeals and remand this case to that court for further proceedings consistent with this opinion, including on those claims that the division did not address based on its previous disposition of this case.