Opinions of the Colorado Supreme Court are available to the
public and can be accessed through the Judicial Branch's homepage at
http://www.courts.state.co.us.  Opinions are also posted on the
Colorado Bar Association's homepage at http://www.cobar.org.

ADVANCE SHEET HEADNOTE
June 17, 2019

**2019 CO 58**

**No. 17SC427, *Blooming Terrace No. 1, LLC v. KH Blake Street, LLC*—Statutory Interpretation—Usury.**

In this case, the supreme court interprets the Colorado usury statute to clarify the proper method for determining the effective rate of interest charged on a nonconsumer loan.  The court holds that the effective interest rate should be calculated by determining the total per annum rate of interest that a borrower is subjected to during a given extension of credit.  Here, where a forbearance agreement was entered into after an event of default, all charges that accrued during the period of forbearance must be totaled and then annualized using only that timeframe as the annualization period.  Such includable interest must then be combined with any interest that continued to accrue pursuant to the original loan terms to determine the effective rate of interest subject to the 45% ceiling set by section 5-12-103, C.R.S. (2018).

**2019 CO 58**

**Supreme Court Case No. 17SC427**
*Certiorari to the Colorado Court of Appeals*
Court of Appeals Case No. 16CA1096

**Petitioner:**

Blooming Terrace No. 1, LLC,

v.

**Respondents:**

KH Blake Street, LLC, and Kresher Holdings, LLC.

**Judgment Reversed**
*en banc*
June 17, 2019

**Attorneys for Petitioner:**
Reilly Pozner LLP
John M. McHugh
   *Denver, Colorado*

**Attorneys for Respondents:**
Moye White LLP
David A. Laird
   *Denver, Colorado*

**Attorneys for Amici Curiae The Hispanic Chamber of Commerce of Metro Denver and The Colorado LGBTQ Chamber of Commerce:**
Childs McCune, LLC
Kyle W. Brenton
   *Denver, Colorado*

**JUSTICE HART** delivered the Opinion of the Court.

¶1 We granted certiorari to clarify the proper method for determining the effective rate of interest charged on a nonconsumer loan to ascertain whether that rate is usurious under Colorado law.[1] We hold that the effective interest rate should be calculated by determining the total per annum rate of interest that a borrower is subjected to during a given extension of credit. Here, where a forbearance agreement was entered into after an event of default, all charges that accrued during the period of forbearance must be totaled and then annualized using only that timeframe as the annualization period. Such includable interest must then be combined with any interest that continued to accrue pursuant to the original loan terms to determine the effective rate of interest subject to the 45% ceiling set by Colorado's usury statute, section 5-12-103, C.R.S. (2018).

## I. Facts and Procedural History

¶2 On April 25, 2013, Blooming Terrace No. 1 ("Blooming Terrace") obtained an $11 million loan from KH Blake Street, LLC ("KH Blake Street"), a special purpose entity organized by Kresher Holdings, LLC. The loan was secured by a deed of trust and

_____

[1] We granted certiorari to review the following mutually exclusive issues:

1. Whether the calculation of an interest rate for a nonconsumer loan under section 5-12-103, C.R.S. (2017), requires late fees and default interest accrued during a forbearance period to be totaled with all other interest charges from the entire loan period and annualized using the entire loan period as the annualization period; or

2. Whether the calculation of an interest rate for a nonconsumer loan under section 5-12-103, C.R.S. (2017), requires late fees and default interest accrued during a forbearance period to be totaled and annualized using only the forbearance period as the annualization period.

2

memorialized by promissory note. Blooming Terrace paid a $220,000 origination fee upon execution of that note. The note specified that interest would accrue on the outstanding principal at a rate of 11% per annum. In the event of default, the note provided for a higher default interest rate of 21% per annum. The note required monthly interest payments in the amount of 8% per annum throughout the term of the loan, though these periodic payments did not apply to reduce the principal balance of the loan. In the event of any late monthly payment, a 5% late fee was applicable to the overdue amount. The note was to mature on May 1, 2014. However, KH Blake Street reserved the right to accelerate Blooming Terrace's full loan repayment obligation upon an event of default.

¶3 Prior to paying down any portion of the principal, Blooming Terrace defaulted on its monthly payment obligation. KH Blake Street consequently issued notices of default on April 2, 2014, and April 17, 2014. The parties entered into a forbearance agreement on April 22, 2014. At that time, the parties stipulated that the accrued charges due and owing to KH Blake Street under the original loan agreement were $778,583.33. In exchange for KH Blake Street's agreement not to pursue collection of that sum, or any other remedies, until May 1, 2014, Blooming Terrace agreed to pay a $110,000 fee. Payment of this new fee did not substitute for any other charges that continued to accrue during the forbearance period, including, but not necessarily limited to, default interest and late fees. Instead, a condition of the forbearance was Blooming Terrace's compliance with all of the original loan terms.

3

¶4     On May 13, 2014, the parties executed a document titled "First Amendment to Forbearance Agreement." This amendment extended the original 9-day forbearance period by an additional 15.5 days. The amended forbearance agreement specified that all loan-related sums were due on or before 1 p.m. on May 16, 2014. As consideration for 15.5 more days of forbearance, 12 of which had already passed, Blooming Terrace agreed to pay KH Blake Street an additional $110,000. Cumulatively, 24.5 days of forbearance cost Blooming Terrace a total fee of $220,000.

¶5     On May 15, 2014, Blooming Terrace paid the loan principal ($11 million) and all other outstanding charges ($1,507,333.53) in full. Two years later, Blooming Terrace sued KH Blake Street and Kresher Holdings, LLC, alleging that the fees, interest, costs, and expenses that accumulated during the post-default forbearance period were usurious in violation of section 5-12-103.

¶6     KH Blake Street and Kresher Holdings, LLC filed a motion to dismiss the complaint pursuant to C.R.C.P. 12(b)(5), arguing that the complaint failed to state a claim upon which relief could be granted because the effective interest rate charged was well below the maximum allowable rate of 45% set by Colorado's usury statute. To assess the merits of this argument, the district court conducted a three-step calculation of the effective interest rate. First, it divided the entire amount of charges assessed over the life of the loan ($1,507,333.53) by 387 days—the length of both the initial loan term and the period of forbearance—to arrive at a daily rate of $3,894.91. Second, it multiplied that daily rate by 365 days to come up with a yearly rate of $1,421,645.32. And finally, it divided this yearly rate by the unpaid principal balance of $11 million to arrive at an

4

effective interest rate of 12.924%. The court therefore dismissed Blooming Terrace's complaint.

¶7     A division of the court of appeals affirmed in a split decision. *Blooming Terrace No. 1, LLC v. KH Blake St., LLC*, 2017 COA 72, ¶¶ 20–22, __ P.3d __. The division majority generally agreed with the district court's calculation method but arrived at a slightly higher (yet still legally enforceable) effective interest rate due to its inclusion of additional charges in its calculation of total interest. *Id.* at ¶¶ 6, 20–22. Rejecting Blooming Terrace's argument that the forbearance fee should be annualized during the period of forbearance alone, and not over the entire life of the loan, the majority concluded that Colorado's usury statute and our opinion in *Dikeou v. Dikeou*, 928 P.2d 1286 (Colo. 1996), require courts to "determine whether the effective interest rate is usurious by retrospectively applying it to the entire principal over the life of the loan." *Id.* at ¶ 19. In other words, the majority interpreted *Dikeou* as compelling identification of the average rate of interest charged over the life of a loan, and then comparing it with the maximum statutorily-permitted rate of 45%. The majority's approach led it to conclude that the effective rate of interest at issue here was 17.6% — again, well below the statutory usury rim. *Id.* at ¶ 22. Thus, the majority affirmed the district court's judgment of dismissal. *Id.* at ¶ 39.

¶8     Judge Navarro dissented and presented a different computational approach. *Id.* at ¶¶ 40–50 (Navarro, J., dissenting). He began by annualizing the total per-day forbearance fee using only the period of forbearance as the annualization period. *Id.* at ¶¶ 44–45. He then concluded that the resultant per annum rate of interest must be added to the default rate of interest required by the original note since that, too, was accruing

during the period of forbearance. *Id.* at ¶ 45. These two rates, when combined, exceeded the 45% maximum rate set forth in Colorado's usury statute. *Id.* Accordingly, the dissent would have reversed the decision of the trial court. *Id.* at ¶ 49.

¶9 Blooming Terrace filed a petition for certiorari review, asking this court to clarify how *Dikeou* and the usury statute require the effective rate of interest to be calculated to determine whether that rate is usurious. We granted the petition.

## II. Analysis

¶10 We begin by addressing the applicable standard of review and then proceed to analyze Colorado's usury statute and our holding in *Dikeou*. We first explain the approach that *Dikeou* set forth for identifying an effective interest rate under the usury statute. Our examination of *Dikeou* leads us to conclude that the "effective rate of interest," or the "applied per annum rate," for purposes of a usury assessment is the total per annum rate of interest that a borrower is subjected to during a given extension of credit. We then apply the necessary calculation to identify the effective interest rate during the 24.5 days of forbearance at issue here and conclude that it exceeded 45%. Accordingly, we reverse the judgment of the court of appeals.

## A. Standard of Review

¶11 We review issues of statutory interpretation de novo. *See UMB Bank, N.A. v. Landmark Towers Ass'n*, 2017 CO 107, ¶ 22, 408 P.3d 836, 840. In so doing, "we look to the entire statutory scheme in order to give consistent, harmonious, and sensible effect to all of its parts, and we apply words and phrases in accordance with their plain and ordinary meanings." *Id.* If the statutory language is clear and unambiguous, we apply it as

6

written—venturing no further.  *See Vallagio at Inverness Res. Condo. Ass'n, Inc. v. Metro. Homes, Inc.*, 2017 CO 69, ¶ 16, 395 P.3d 788, 792.  Ultimately, it is our goal to effectuate the legislature's intent.  *See St. Vrain Valley Sch. Dist. RE-1J v. Loveland*, 2017 CO 54, ¶ 11, 395 P.3d 751, 754.

## B. Identifying the Effective Interest Rate Under *Dikeou*

¶12    Colorado's usury statute permits parties to contract for higher-than-market rate levels of interest, subject to the limitation that the interest rate may not exceed 45%.  *See* § 5-12-103(1).  The statute defines interest broadly as "the sum of all charges payable directly or indirectly by a debtor and imposed directly or indirectly by a lender as an incident to or as a condition of the extension of credit to the debtor . . . ." § 5-12-103(2). We recognized the breadth of the statutory definition of interest in *Dikeou* when we held that daily late charges were a "condition of extending credit after the initial default," and were therefore includable as interest under the terms of the usury statute.  928 P.2d at 1290.  Like the late charges at issue in *Dikeou*, forbearance fees fit within the statutory definition of interest; they are fees charged as a condition of temporarily abstaining from pursuing available post-loan default remedies thus allowing the continued extension of credit.

¶13    We further recognized in *Dikeou* the import of the legislature's use of the phrase "sum of all charges" in the definition of interest.  *Id.*  ("By using the phrase 'sum of all charges' the legislature contemplated that the parties may provide for more than just a single percentage-based charge.").  The usury statute specifically contemplates that the determination of whether an effective interest rate exceeds the statutory cap of 45% will

7

involve adding all the charges imposed as a condition of an extension of credit to determine whether that sum total exceeds the cap. The history of this case—in which the parties, the trial court, the court of appeals majority, and the dissent each read *Dikeou* to require a slightly different calculation—demonstrates that we were less than clear in that opinion about precisely how to add those charges and calculate an effective interest rate for determination of whether the rate was usurious. *See Blooming Terrace*, ¶ 40 (Navarro, J., dissenting) (noting this confusion).

¶14    In *Dikeou*, we were confronted with a loan that prescribed a late payment charge of $700 per day on payments that were more than one day late. 928 P.2d at 1287. There, the debtor was late on his payments and was ultimately charged late payment fees for two years, though the creditor in fact charged him a late fee of only $413.33 per day. *Id.* We rejected an argument that late fees could not be usurious interest because they could not be calculated at the time the agreement was originally entered into. We acknowledged that the statute provides that

> [t]he rate of interest shall be deemed to be excessive of the limit under this section *only if it could have been determined at the time of the stipulation by mathematical computation that such rate would exceed an annual rate of forty-five percent* when the rate of interest was calculated on the unpaid balances of the debt on the assumption that the debt is to be paid according to its terms and will not be paid before the end of the agreed term.

*Id.* at 1293–94 (quoting § 5-12-103(1)) (emphasis added). We agreed that a literal interpretation of that statutory computation provision "would require a finding that default interest can never be usurious because the effective rate of interest cannot be

8

computed at the loan's inception." *Id.* at 1294. Seeing no evidence that the legislature intended to limit the usury statute in that way, we concluded that a limited retrospective analysis was required where an element of the total interest charged was only ascertainable after final satisfaction of all loan obligations, including those due and owing on account of the debtor's default. *Id.* at 1294–95. We explained "that for nonconsumer loans a default interest rate is . . . enforceable so long as the applied per annum rate, when added to the initial rate charged on the outstanding principle, is less than 45% of the unpaid principal balance at the time of the default." *Id.* at 1295.

¶15    We then endeavored to compute the interest at issue in *Dikeou*. *Id.* We began by converting the $413.33 per day late fee that was actually charged into a percentage of the unpaid balance of the loan. *Id.* While we did not write out the math in longhand, we concluded that the default interest rate was 31.9%. *Id.* The mathematical approach that yielded that number was to: (1) translate the daily rate of $413.33 into a per annum rate by multiplying it by 365 for a total of $150,865.45; and (2) divide that total by $472,764.45, which was the total unpaid balance. We then added that 31.9% default interest rate to the still-accruing initial loan interest rate of 13% to reach an effective interest rate of 44.9%. *Id.* We held that that effective rate was not usurious under section 5-12-103.[2] *Id.*

---

[2] Given the resulting 44.9% rate, it does not look like a coincidence that the creditor in *Dikeou* only charged $413.33 per day, instead of the $700 daily fee specified in the loan agreement.

¶16 Examination of the *Dikeou* computation leads us to hold here that "the applied per annum rate," or the "effective interest rate," for a given extension of credit is calculated by determining the total per annum rate of interest that a borrower is subjected to during a given extension of credit—not the average rate of interest assessed over the entire life of the loan. To assess whether an effective interest rate violates Colorado's usury statute where a post-default forbearance fee is charged, the forbearance fee must be annualized using only the timeframe of forbearance as the annualization period. The resulting interest rate must then be added to any other charges accruing during that period to arrive at the effective interest rate, i.e. "the sum of all charges." § 5-12-103(2).

¶17 The parties here argue at length over whether this dispute involves a single extension of credit, as the court of appeals discerned, or multiple extensions of credit. Blooming Terrace argues to this court that there were four separate extensions of credit: the original loan; the first period of forbearance that ran from April 22, 2014, to May 1, 2014; a period of implied forbearance from May 1, 2014, until May 13, 2014 when the parties signed the First Amendment to Forbearance Agreement; and the three-day period covered by that amendment. Not surprisingly, breaking the 24.5 days of forbearance into three distinct, shorter periods would result in a calculation of significantly higher interest for each of the shorter periods and therefore higher potential damages owed to Blooming Terrace.

¶18 KH Blake Street, by contrast, argues that there were two extensions of credit—the initial loan and then a 24.5-day period of forbearance. Consequently, it contends that there were two independent interest rates, neither of which was usurious. According to

10

KH Blake Street, Blooming Terrace continued to pay default interest on the initial loan at the same time that it was paying the forbearance fee under the entirely separate extension of credit memorialized by the Forbearance Agreement. KH Blake Street therefore argues that this situation is different from *Dikeou* in that the default interest from one extension of credit (here, the loan) should not be added to the fee charged for a second, separate extension of credit (here, the forbearance) in determining "the sum of all charges" for statutory purposes.

¶19 We disagree with both parties' arguments. As to Blooming Terrace's argument that there were three distinct periods of forbearance, the agreements signed by the parties demonstrate otherwise. The First Amendment to Forbearance Agreement signed on May 13 specifies that it is an amendment to the original forbearance agreement that extends the forbearance period. That amendment, among other things, deletes Section 2.2 of the original Forbearance Agreement (which specified payment of a single $110,000 forbearance fee) and replaces it with a new Section 2.2 (which specifies payment of a single $220,000 forbearance fee). It also provides that "Section 4 of the Forbearance Agreement is hereby revised by replacing the 'May 1, 2014' dates with 'May 16, 2014 at 1:00 pm (MT).'" These provisions demonstrate the parties' intent that the First Amendment to Forbearance Agreement was neither a new contract nor an independent extension of credit, but simply an amendment, which operated as a modification of the credit extended rather than a serial extension.

¶20 KH Blake Street's argument that because the Forbearance Agreement was a separate extension of credit from the initial loan the default interest on the loan cannot be

11

combined with the forbearance fee is also foreclosed by the parties' agreements. The terms of the Forbearance Agreement and First Amended Forbearance Agreement incorporate the default interest rate imposed as a result of the initial loan agreement. The Forbearance Agreement, for example, provides that it is a condition of forbearance that the borrower will comply with all the original loan terms and "shall pay all costs, fees, and expenses incurred by Lender in connection with Borrower's default under the Loan Documents." The Forbearance Agreement further states that the "Lender shall temporarily forbear from enforcing remedies under the Loan Documents on account of the existing default" but only if "Borrower and Guarantor comply with the terms of this Agreement and the Terms of the Loan Documents." Given the Forbearance Agreement's incorporation of the terms of the initial loan, the sum of all charges imposed during the period of forbearance includes both the default interest and the forbearance fee.

¶21    Therefore, applying *Dikeou* here, we will look to the 24.5-day period of forbearance and inquire whether the forbearance fee, annualized over that period, together with any other interest and fees charged during that time exceeds a 45% effective interest rate. Step one in that calculation is the conversion of the total forbearance fee ($220,000) into a daily rate. This is accomplished by dividing that post-default fee by the length of the full forbearance period (24.5 days), which yields a rate of $8,979.59 per day. The same must be done for any other charges accrued during the forbearance period that are not already

12

set out in the form of an annualized percentage interest rate.[3]  The daily rates of all such accrued charges includable as interest must then be added together.

¶22    Second, we must annualize the aggregate daily rate.  This is accomplished by multiplying the aggregate daily rate by 360 days (the number of days the parties agreed to consider as a year) to arrive at a per annum rate and then dividing that per annum rate by the unpaid principal balance at the commencement of the forbearance period ($11 million).  The daily rate of the converted forbearance fee alone produces a per annum rate of 29.4% when annualized using only the forbearance period as the annualization period.

¶23    Finally, because both the promissory note and each iteration of the forbearance agreement also provided for accrual of 21% default interest during the forbearance period, we must, at a minimum, combine the default interest rate with the annualized rate of interest imposed by way of the forbearance fee to reach the total effective rate imposed during the forbearance period.  Here, that combined rate is 50.4%.  Under Colorado law, the total effective rate of interest charged during the forbearance period was usurious.  § 5-12-103(1).[4]

---

[3] Given the pre-discovery procedural posture of this case, it would be premature for us to endeavor to incorporate any other charges accrued during the forbearance period into our effective interest rate demonstration.  Here, an assessment of the forbearance fee and default interest rate alone is sufficient to demonstrate a violation of Colorado's usury statute.

[4] KH Blake Street requested an award of attorney's fees in this dispute.  Given our resolution of the merits question, that request is denied.

# III. Conclusion

¶24 For the purpose of Colorado's usury statute, the effective rate of interest to be assessed is the total per annum interest rate that a borrower is subjected to during a given extension of credit. To compute the effective interest rate here, the forbearance fee must be annualized using only the forbearance period as the annualization period. The resulting per annum rate must then be added to any other interest being charged during the post-default forbearance period to arrive at the "sum of all charges" contemplated by the usury statute.

¶25 Because Blooming Terrace was charged an effective interest rate during the forbearance period that exceeds 45% when annualized and totaled in conformity with the formula we set forth in *Dikeou*, we reverse the decision of the court of appeals. We remand with instructions for the district court to reinstate Blooming Terrace's erroneously dismissed complaint. The eventual computation, if any, of the actual effective interest rate at issue should be conducted in conformity with this opinion.

14