489 P.3d 743
POUDRE SCHOOL DISTRICT R-1 and Poudre School District R-1 Board of Education, Petitioners
v.Patricia STANCZYK and Poudre Education Association, Respondents.
Supreme Court Case No. 20SC269 Supreme Court of Colorado.
June 21, 2021
Attorneys for Petitioners: Semple, Farrington, Everall & Case, P.C., M. Brent Case, Jonathan P. Fero, Mary B. Gray, Denver, Colorado
Attorneys for Respondents: Colorado Education Association, Charles F. Kaiser, Brooke Copass, Rory Herington, Denver, Colorado
Attorneys for Amicus Curiae Colorado Attorney General: Philip J. Weiser, Attorney General, Jenna Zerylnick, Assistant Attorney General, Denver, Colorado
Attorneys for Amicus Curiae Colorado State Board of Education: Philip J. Weiser, Attorney General, Julie C. Tolleson, First Assistant Attorney General, Denver, Colorado
En Banc
JUSTICE HART delivered the Opinion of the Court.
¶1 Section 22-63-203.5, C.R.S. (2020), of the Teacher Employment, Compensation, and Dismissal Act ("TECDA") provides that, beginning with the 2014-15 school year, a nonprobationary teacher in Colorado "who is employed by a school district and is subsequently hired by a different school district ... shall be granted nonprobationary status in the hiring school district" if the teacher "can show two consecutive performance evaluations with effectiveness ratings in good standing." In 2016, Patricia Stanczyk, who obtained nonprobationary status in the Thompson School District in 1999, applied for several teaching positions with the Poudre School District ("PSD") through its online application portal. The application required her to attest that she voluntarily waived her right to transfer, or "port," nonprobationary status under section 22-63-203.5 and stated that the job was conditioned on this waiver. Stanczyk's teaching contract for the 2016-17 school year contained language similar to the online application and further provided that the contract was voidable at PSD's option if Stanczyk asserted portability of her nonprobationary status.
¶2 We granted certiorari to determine whether, under section 22-63-203.5, a school district is prohibited from asking or requiring a teacher who earned nonprobationary status in another district to waive portability of that status.1 TECDA plainly places the decision-making authority with respect to asserting or waiving portability with the teacher, and we therefore hold that school districts may not require teachers to waive portability of nonprobationary status as a condition of employment. Because waiver was required as a condition of employment in this case, Stanczyk's waiver of her right to assert portability was involuntary and, as a result, invalid. We therefore affirm the judgment of the court of appeals, albeit on other grounds, and remand for further proceedings.
I. Facts and Procedural History
¶3 Stanczyk was a teacher in the Thompson School District from 1995 through 2016; she attained nonprobationary status in 1999. In the spring of 2016, Stanczyk applied to several teaching positions within PSD through its online application portal. All teaching positions posted by PSD for the 2016-17 school year were advertised as "probationary," and all individuals applying for these teaching positions were required to certify their "understanding and agreement" in their online applications that:
(a) the positions for which I am applying are for licensed probationary teachers and/ or special services providers; (b) by applying for these positions I have voluntarily decided to waive my right to assert the portability of nonprobationary status I have acquired in another school district, if any; and (c) any offers of employment extended by Poudre School District to me for these positions are conditioned on my signing a probationary teacher employment contract and not asserting the portability of nonprobationary status I have acquired in another school district, if any.
Applicants were required to click "I agree" to these statements in order to submit the application – there was no way for applicants to skip this step or indicate lack of agreement in the application portal. Stanczyk checked this box and submitted her application.
¶4 PSD offered, and Stanczyk accepted, a teaching position for the 2016-17 school year. Stanczyk subsequently signed a "Probationary Teacher Employment Contract," which stated that she "is employed as a probationary teacher under C.R.S. § 22-63-203, and has voluntarily waived the right under C.R.S. § 22-63-203.5 to assert the portability of nonprobationary status acquired in another school district, if any." The contract stated further that it was "voidable at the option of the Board of Education ... if the TEACHER asserts the portability of nonprobationary status acquired in another school district, if any."
¶5 Before Stanczyk signed her employment contract, she went to PSD's human resources office to ask about portability of her nonprobationary status from the Thompson School District. In response to Stanczyk's inquiry, an unidentified PSD employee told her that "we don't do that here." PSD's Human Resources Director later testified that she did not know how her office would handle a situation where an applicant did not want to waive their right to port nonprobationary status or whether PSD would have even hired such an applicant. Unlike many other school districts in the state, PSD did not have a policy in place regarding portability of nonprobationary status. Thus, Stanczyk signed the employment contract in August 2016 without getting an answer to her question regarding portability.
¶6 In April 2017, a supervisor notified Stanczyk that her teaching contract would not be renewed for the following school year. A few days later, Stanczyk emailed PSD's Human Resources Director to request portability of her nonprobationary status and submitted her 2014-15 and 2015-16 teacher evaluations from the Thompson School District in support of her request. At that time, Stanczyk was the only employee in PSD to have requested portability of her nonprobationary status. PSD denied Stanczyk's request, pointing to the language contained in Stanczyk's online application and employment contract.
¶7 Stanczyk and the Poudre Education Association ("PEA") then filed this lawsuit seeking, among other things, a declaratory judgment that (1) section 22-63-203.5 requires a school district to grant a teacher nonprobationary status if the teacher provides the requisite documentation, and (2) PSD violated Stanczyk's rights under the statute. PSD moved for summary judgment, which the district court granted, finding that the right to request nonprobationary portability under section 22-63-203.5 is waivable and that Stanczyk validly waived her right to port her nonprobationary status. The district court also found that, because the statute did not explicitly prohibit such blanket waivers, school boards could lawfully require teachers to waive their right to port nonprobationary status as a condition of employment.
¶8 Stanczyk appealed, and a division of the court of appeals affirmed in part and reversed in part. Stanczyk v. Poudre Sch. Dist. R-1, 2020 COA 27M, ¶ 5, ––– P.3d ––––. The court of appeals concluded that PSD placed unreasonable restrictions on prospective teachers' right to port their nonprobationary status in violation of section 22-63-203.5 and held that if a teacher complies with the statute's requirements, the hiring school district must grant the teacher nonprobationary status. Id. at 11 59-60, 65-69.
¶9 PSD petitioned this court for certiorari, and we granted the petition to determine the proper construction of section 22-63-203.5.
II. Analysis ¶10 We begin by addressing the applicable standard of review. We then examine TECDA, and specifically analyze section 22-63-203.5 to determine whether school districts may require applicants to waive their right to port nonprobationary status as a condition of employment. We conclude that they may not.
¶11 Section 22-63-203.5 provides that hiring school districts shall grant nonprobationary status to teachers who request it and submit the documents required by the statute. While school districts are free to negotiate with potential hires over portability, they may not avoid this statutory mandate by simply requiring applicants to consent to blanket waivers during the hiring process. Accordingly, we affirm the decision of the court of appeals, though on different grounds.
A. Standard of Review ¶12 We review de novo a district court's decision to grant summary judgment. People ex rel. Rein v. Meagher, 2020 CO 56, ¶1 19, 465 P.3d 554, 559. Because we apply the same standard as the district court in our review, we must "determine whether a genuine issue of material fact existed and whether the district court correctly applied the law." City of Fort Collins v. Colo. Oil & Gas Ass'n, 2016 CO 28, ¶ 9, 369 P.3d 586, 590. Summary judgment is a drastic remedy that should be granted only when it is clear that the applicable standards have been met. Meagher , ¶ 21, 465 P.3d at 559. ¶13 We also review de novo issues of statutory interpretation. Blooming Terrace No. 1, LLC v. KH Blake St., LLC, 2019 CO 58, ¶ 11, 444 P.3d 749, 752. Our primary goal when interpreting a statute is "to effectuate the legislature's intent." Id. To accomplish this, "we look to the entire statutory scheme in order to give consistent, harmonious, and sensible effect to all of its parts, and we apply words and phrases in accordance with their plain and ordinary meanings." Id. (quoting UMB Bank, N.A. v. Landmark Towers Ass'n, 2017 CO 107, ¶ 22, 408 P.3d 836, 840 ). "If the statutory language is clear and unambiguous, we apply it as written – venturing no further." Id. ; accord Bill Barrett Corp. v. Lembke, 2020 CO 73, ¶ 14, 474 P.3d 46, 49.
B. Applicable Law
¶14 In 1990, the General Assembly enacted TECDA, supplanting its predecessor, the Teacher Employment, Dismissal, and Tenure Act of 1967 ("TEDTA"), ch. 435, sec. 1, §§ 123-18-1 to -18, 1967 Colo. Sess. Laws 976, and establishing new statewide standards for teacher employment, compensation, and dismissal. TECDA marked a seismic shift in education law in the state, replacing the tenure system then in force with a system under which teachers were classified as either "probationary" or "nonprobationary." § 22-63-103(7), C.R.S. (1990). Unlike TEDTA, which "entitled" teachers to employment when they became tenured, § 22-63-115(1), C.R.S. (1988), TECDA provides teachers no such entitlement. Sch. Dist. No. 1 v. Masters, 2018 CO 18, ¶ 6, 413 P.3d 723, 726. Still, nonprobationary status provides teachers some employment protections not offered to those with probationary status. See id. at ¶ 7, 413 P.3d at 726. For example, while probationary teachers may be nonrenewed at the end of every school year for any reason, § 22-63-203(4)(a), C.R.S. (2020), nonprobationary teachers can only be dismissed for cause, § 22-63-301, C.R.S. (2020).
¶15 Although TECDA initially granted a teacher nonprobationary status solely based on length of "continuous employment" with a school district, § 22-63-103(7), C.R.S. (1990), another landmark reform enacted in 2010, familiarly known as S.B. 191, explicitly tied teachers' status to their "demonstrated effectiveness" over a period of time. Ch. 241, secs. 1-18, 2010 Colo. Sess. Laws 1053 (codified as amended in scattered sections of Title 22, C.R.S.). Declaring that "[a] system to evaluate the effectiveness of licensed personnel is crucial to improving the quality of education" in Colorado, S.B. 191 imposed demanding new performance standards on teachers through the creation of a system that "shall be applicable to all [teachers] ... throughout the state." § 22-9-102(1)(a), C.R.S. (2010). The new law provided districts with more authority to sideline poor performers, including by tying nonprobationary status to demonstrated effective performance, which was directly connected to student academic growth. See § 22-63-103(7), C.R.S. (2010) (defining a probationary teacher as "a teacher who has not completed three consecutive years of demonstrated effectiveness" or who, as a nonprobationary teacher, has demonstrated two years of ineffective performance); § 22-9-106(1)(e)(II)/ C.R.S. (2010) ("One of the standards for measuring teacher effectiveness shall be directly related to classroom instruction and shall require that at least fifty percent of the evaluation is determined by the academic growth of the teacher's students.").
¶16 In conjunction with the creation of these new performance standards, the General Assembly granted effective teachers who earned nonprobationary status certain new benefits, including the ability to transfer their nonprobationary status from one school district to another, beginning with the 2014-15 school year. § 22-63-203.5. Unlike TEDTA, which stated that local school boards "may grant tenure to any teacher ... who has previously acquired tenure ... in another school district," § 123-18-12(2)(c), C.R.S. (1967) (emphasis added), S.B. 191 amended TECDA to provide that hiring school districts "shall ... grant[ ] nonprobationary status" to nonprobationary lateral teachers who request it and can provide the requisite documentation, § 22-63-203.5, C.R.S. (2010) (emphasis added). ¶17 The General Assembly's use of the word "shall" in section 22-63-203.5 of TECDA is presumed to be deliberate. See City & Cnty. of Denver v. Gallegos, 916 P.2d 509, 512 (Colo. 1996) ("The legislative choice of language may be concluded to be a deliberate one calculated to obtain the result dictated by the plain meaning of the words."), disapproved on other grounds by Corsentino v. Cordova, 4 P.3d 1082, 1086 (Colo. 2000). And because "[t]here is a presumption that the word ‘shall’ when used in a statute is mandatory," Mook v. Bd. of Cnty. Comm'rs, 2020 CO 12, ¶ 80, 457 P.3d 568, 583 (quoting Riley v. People , 104 P.3d 218, 221 (Colo. 2004) ), the plain language of section 22-63-203.5 requires school districts to grant portability so long as the statutory conditions are met.
¶18 Although we decipher the General Assembly's intent by looking to the language of section 22-63-203.5, the legislative history of that provision buttresses our conclusion that the General Assembly did not wish to make compliance with section 22-63-203.5 optional for school districts. Representative Christine Scanlan, who introduced section 22-63-203.5 as an amendment to the original version of S.B. 191, explained that "a teacher who has earned status as an effective teacher by criteria that is recognized across the state ... has earned their nonprobationary status ... that will now be portable with them to any other district that they might go to." Hearing on S.B. 191 before the H. Educ. Comm., 67th Gen. Assemb., 2d Sess. (May 6, 2010) (statement of Rep. Christine Scanlan) (emphasis added). Representative Scanlan added that the fact that teachers will "not have to re-earn [nonprobationary status] in a new district" should be "quite appealing" to "rural districts ... who have trouble attracting experienced teachers often." Id.
¶19 This is not to say that portability is an absolute mandate: The statutory language is clear that teachers may well choose to opt out of requesting a transfer of their nonprobationary status. In its entirety, section 22-63-203.5 reads:
Beginning with the 2014-15 school year, a nonprobationary teacher, except for a nonprobationary teacher who has had two consecutive performance evaluations with an ineffective rating, who is employed by a school district and is subsequently hired by a different school district may provide to the hiring school district evidence of his or her student academic growth data and performance evaluations for the prior two years for the purposes of retaining nonprobationary status. If, upon providing such data, the nonprobationary teacher can show two consecutive performance evaluations with effectiveness ratings in good standing, he or she shall be granted nonprobationary status in the hiring school district.
(Emphases added.) The fact that "a nonprobationary teacher ... may provide" proof of effectiveness to the hiring school district shows that the choice to request portability, along with the burden to provide the requisite documents, lies squarely with the teacher. Id. (emphasis added). A nonprobationary teacher may choose not to port that status to the hiring school district. And a teacher may fail to provide the requisite documentation, in which case the district would not be required to grant nonprobationary status. However, once "the nonprobationary teacher can show" proof to support her request to port her status, "she shall be granted nonprobationary status in the hiring school district." Id. (emphasis added). The statute's mandate on school districts could not be more plain.
¶20 While school districts cannot mandate waiver as a condition of employment, a school district that does not want to hire a nonprobationary teacher has several options. First, TECDA permits a school district to apply to the State Board of Education for a waiver of most of TECDA's requirements, including the portability of nonprobationary status. § 22-2-117, C.R.S. (2020). If a school district does apply for a waiver, the state board is required to grant it if the board determines that the waiver "would enhance educational opportunity and quality within the school district" and that the costs of compliance "significantly limit educational opportunity within the school district." § 22-2-117(1)(a).2 Second, a district could choose to hire a less experienced teacher who has not yet achieved nonprobationary status. Finally, and as discussed more below, school districts are free to engage in arm's length negotiations with teachers regarding voluntary waivers of portability during the hiring process.
C. Application ¶21 The parties here do not dispute that (1) Stanczyk's online application and employment agreement contained language requiring a waiver of "her right to assert the portability of nonprobationary status"; (2) she could not have submitted the online application without agreeing to a waiver; and (3) her employment agreement was explicitly voidable at PSD's option if she asserted her right to transfer her nonprobationary status. Despite this, PSD claims that waiver here was not actually mandatory because Stanczyk could theoretically have attempted to negotiate more favorable terms or submit a paper application without checking the box requiring her to waive her rights under section 22-63-203.5. The court of appeals disagreed and concluded that there was no dispute in the record that PSD required a waiver. We agree with the court of appeals that, on the undisputed facts presented here, the school district required Stanczyk to waive portability as a condition of employment. ¶22 PSD argues that even if it did require a waiver of nonprobationary portability, mandatory waivers are permissible under section 22-63-203.5 because the statute does not explicitly prohibit them. True, parties are generally free to "enter into contracts abrogating or limiting statutory provisions which confer a right or benefit upon one or both parties" in the absence of an express statutory prohibition on waiver. Francam Bldg. Corp. v. Fail, 646 P.2d 345, 348 (Colo. 1982). But the General Assembly's use of the phrase "shall ... grant[ ]" in section 22-63-203.5 is at least strong indication that it did not intend to give school districts the option to require contractual waivers. Further, the ability to contract away statutory rights is limited by "countervailing public policy" interests. Francam Bldg. Corp., 646 P.2d at 348. Accepting the logic of PSD's argument would suggest that school districts could also opt out of the many other provisions in TECDA that do not explicitly prohibit waivers. These include provisions requiring that nonprobationary teachers be fired only for cause, § 22-63-301, in accordance with specific dismissal procedures, § 22-63-302, C.R.S. (2020), and prohibiting discrimination in transfer assignments because of "sex, sexual orientation, marital status, race, creed, color, religion, national origin, ancestry, or membership or nonmembership in any group or organization," § 22-63-206(1)(a), C.R.S. (2020), as well as broader provisions protecting applicants from discrimination, §§ 24-34-401 to - 406, C.R.S. (2020). Because this kind of local waiver requirement would effectively nullify many provisions of TECDA, we hold that school districts may not require teachers to waive benefits granted to them under TECDA as a condition of employment. See Mosley v. People, 2017 CO 20, ¶ 16, 392 P.3d 1198, 1202 ("[W]e avoid statutory interpretations that defeat legislative intent or lead to absurd results."). ¶23 PSD argues next that, notwithstanding the fact that waiver was required in the online application and the employment agreement, Stanczyk voluntarily waived her right to port her nonprobationary status by applying to a teaching position advertised as "probationary," and then accepting the terms of her employment agreement. We disagree. ¶24 The parties agree that the portability right granted by section 22-63-203.5 may be waived. They also agree that any waiver of statutory rights must be voluntary. See Finney v. People, 2014 CO 38, ¶ 16, 325 P.3d 1044, 1050 ; People v. Allen, 744 P.2d 73, 75 (Colo. 1987), superseded by statute on other grounds as recognized in People v. Newton, 764 P.2d 1182, 1187 (Colo. 1988). This court has concluded previously that "voluntarily" means "intentionally" and "of free will." People v. Martinez, 70 P.3d 474, 478 (Colo. 2003). As such, a waiver of statutory rights is only voluntary if the choice to waive was free and deliberate and was made without intimidation, coercion, or deception. See id. ; see also Cardman v. People, 2019 CO 73, ¶ 21, 445 P.3d 1071, 1079 (discussing the meaning of voluntary waivers in the Miranda context); People v. Humphrey, 132 P.3d 352, 356 (Colo. 2006) (same); Voluntarily, Voluntary, Webster's Third New International Dictionary (2002) ("voluntarily" means "in a voluntary manner: of one's own free will;" and "voluntary" means "produced in or by an act of choice" or "done by design or intention"); Voluntarily, Voluntary, Black's Law Dictionary (11th ed. 2019) ("voluntarily" means "[i]ntentionally; without coercion" and "voluntary" means "[d]one by design or intention").
¶25 Here, Stanczyk did not make a free and deliberate choice to waive her right to nonprobationary portability under section 22-63-203.5. In fact, the record indicates just the opposite: Stanczyk inquired about asserting portability before she signed her employment contract but was turned away with the statement that "we don't do that here." PSD's Human Resources Director testified that she did not know whether PSD would have even hired an applicant unwilling to waive her portability rights. Because Stanczyk could not have applied to the position without agreeing to a waiver, and her employment agreement was voidable at PSD's option if she attempted to assert her rights, it is not speculation to conclude that her employment was, in fact, conditioned on her waiver. Because waiver of Stanczyk's rights under section 22-63-203.5 was mandated as a condition of employment, her waiver was not the result of a free and deliberate choice and, therefore, was involuntary and invalid as a matter of law. ¶26 PSD also claims that enforcing the plain language of section 22-63-203.5 would run afoul of the "local control" provision of the Colorado Constitution. See Colo. Const. art. IX, § 15 (providing that a local board of education "shall have control of instruction in the public schools of their respective districts"). This argument ignores the entire structure of public education in Colorado. Although the state constitution provides local school boards authority over teacher employment decisions, this authority is not unlimited and "can be restricted or limited ... by statutory criteria and/ or judicial review" so long as the limitation does not "usurp[ ] the local board's decision-making authority or its ability to implement, guide, or manage the educational programs for which it is ultimately responsible." Bd. of Educ. of Sch. Dist. No. 1 v. Booth, 984 P.2d 639, 649 (Colo. 1999). Balancing the General Assembly's obligation to "provide for the establishment and maintenance of a thorough and uniform system of free public schools," Colo. Const. art. IX, § 2, against local school boards' decision-making authority, this court has "consistently upheld statutory schemes that limit local board authority" in interpreting TECDA, Booth, 984 P.2d at 649. For example, TECDA lawfully limits school boards' hiring and firing authority to ensure a uniform public school system throughout the state. See § 22-63-201(1), C.R.S. (2020) (requiring that districts hire only licensed teachers); §§ 22-63-301 to - 302 (providing grounds and procedures for teacher dismissals); see also §§ 22-60.5-101 to - 309.5, C.R.S. (2020) (Colorado Educator Licensing Act). And such limitations are not new —school districts have historically been subject to the state's supervision over teacher employment. See, e.g., An Act to Establish and Maintain a System of Free Schools, ch. 92, 1877 Colo. Sess. Laws 807; An Act Relating to the Tenure of Service of Teachers in the Public Schools, ch. 215, 1921 Colo. Sess. Laws 726; Teacher Tenure Act, ch. 230, 1949 Colo. Sess. Laws 661; Teacher Tenure Act of Colorado, ch. 212, sec. 3, 1953 Colo. Sess. Laws 559; Teacher Employment, Dismissal, and Tenure Act of 1967, ch. 435, sec. 1, §§ 123-18-1 to -18, 1967 Colo. Sess. Laws 976. Like these many other laws, TECDA's section 22-63-203.5 limits the scope of a local board's authority, but it does not run afoul of the local control clause because school districts still retain ultimate authority over teachers' employment (and dismissal).
¶27 Last, PSD argues that "[i]f portability is a mandate that neither a teacher nor a school district can bargain away," the teaching market for experienced teachers would narrow because school districts would "obvious[ly]" prefer to hire "new or less experienced teachers." But this proposition is far from obvious. School districts may very well choose to hire experienced teachers and provide nonprobationary status upon request because they value the experience that a seasoned teacher brings. And if a nonprobationary hire does not ultimately meet the standards expected by a school district, the district would not be without recourse: School districts may dismiss nonprobationary teachers after they have twice been rated "ineffective" or "partially effective," Dep't of Educ., 1 Colo. Code Regs. 301-87:3.03(A)-(B) (2020), or after notice and a hearing in accordance with the procedures established by TECDA. See § 22-63-301 (unsatisfactory performance is a ground for dismissal); § 22-63-302 (dismissal procedures). What a school district cannot do is enjoy the benefit of hiring experienced and effective teachers while also refusing to provide them the benefits that they are entitled to under section 22-63-203.5.
¶28 In any event, our holding today is limited to the conclusion that school districts may not require waiver of the statutory right to port nonprobationary status as a condition of employment. School districts are free to engage in arm's length negotiations during the hiring process in order to obtain voluntary waivers of portability rights. Because the issue is not before us, we do not speculate as to what such negotiations would entail.
¶29 Although PSD here improperly mandated a waiver of Stanczyk's portability rights, several factual issues remain unresolved. First, it is unclear from the record whether Stanczyk submitted the documentation required by section 22-63-203.5 to assert portability of her nonprobationary status. Second, the record suggests that Stanczyk requested portability several months after she began working for PSD, and after she was informed that her employment agreement would not be renewed for the next school year. It is unclear whether the timing of this request bears on its effectiveness. The trial court is best suited to make these factual determinations. See People v. McRae, 2019 CO 91, ¶ 19, 451 P.3d 835, 840. We therefore remand to the court of appeals with instructions to return the case to the trial court.
III. Conclusion
¶30 Because the plain language of section 22-63-203.5 provides teachers the choice to assert portability when hired by a new school district, we hold that school districts may not require teachers to waive portability of nonprobationary status as a condition of employment. Because waiver was required as a condition of employment in this case, Stanczyk did not voluntarily waive her right to assert portability of her nonprobationary status. Accordingly, we affirm the judgment of the court of appeals, albeit on other grounds, and remand for further proceedings consistent with this opinion.
1 We granted certiorari to review the following issue:
Whether a school district is prohibited from asking or requiring a teacher who earned nonprobationary status in another district to waive portability of that status.
2 This waiver provision further supports our holding. If school districts could require contractual waivers of benefits (like portability) as a condition of employment, outside the process established by section 22-2-117(1)(a), then that statutory process would be superfluous. We must avoid an interpretation of section 22-63-203.5 that would essentially nullify section 22-2-117(1)(a). See, e.g., Dep't of Revenue v. Agilent Techs., Inc., 2019 CO 41, ¶ 32, 441 P.3d 1012, 1019 (avoiding a statutory construction that would render another section meaningless).