Opinions of the Colorado Supreme Court are available to the public and can be accessed through the Judicial Branch's homepage at http://www.courts.state.co.us. Opinions are also posted on the Colorado Bar Association's homepage at http://www.cobar.org.

ADVANCE SHEET HEADNOTE

**2018 CO 18**

**No. 15SC1062, <u>Sch. Dist. No. 1 v. Masters</u>—Public Employment—Education.**

In this case, the supreme court considers two questions. First, it considers whether the General Assembly, by enacting the Teacher Employment, Compensation, and Dismissal Act of 1990 ("TECDA"), created a legislative contract that it later impaired by enacting the unpaid-leave provisions of section 22-63-202(2)(c.5), C.R.S. (2017). Second, it considers whether a nonprobationary teacher who is placed on unpaid leave under section 22-63-202(2)(c.5)(IV) is deprived of due process. The supreme court holds that TECDA did not create a legislative contract or vest nonprobationary teachers who are placed on unpaid leave with a property interest in salary and benefits. The supreme court therefore concludes that the General Assembly has not impaired a contractual obligation by enacting the unpaid-leave provisions, and that nonprobationary teachers who are placed on unpaid leave have not suffered a violation of their right to due process.

# The Supreme Court of the State of Colorado

2 East 14th Avenue • Denver, Colorado 80203

## 2018 CO 18

**Supreme Court Case No. 15SC1062**
*Certiorari to the Colorado Court of Appeals*
Court of Appeals Case No. 14CA1348

### Petitioners:

School District No. 1 in the City and County of Denver; and Valentina Flores, Debora Scheffel, Pam Mazanec, Steve Durham, Jane Goff, Joyce Rankin, and Angelika Schroeder, in their official capacities as members of the Colorado State Board of Education,

v.

### Respondents:

Cynthia Masters, Michelle Montoya, Mildred Anne Kolquist, Lawrence Garcia, Paula Scena, Jane Harmon, Lynne Rerucha, and Denver Classroom Teachers Association.

### Judgment Reversed
*en banc*
March 12, 2018

---

**Attorneys for Petitioner School District No. 1 in the City and County of Denver:**
Lewis Roca Rothgerber Christie LLP
Eric V. Hall
Tamara F. Goodlette
Stacy Kourlis Guillon
  *Denver, Colorado*

**Attorneys for Petitioners Valentina Flores, Debora Scheffel, Pam Mazanec, Steve Durham, Jane Goff, Joyce Rankin, and Angelika Schroeder:**
Cynthia H. Coffman, Attorney General
Frederick R. Yarger, Solicitor General
Julie C. Tolleson, First Assistant Attorney General
Antony B. Dyl, Senior Assistant Attorney General and Assistant Solicitor General
Davin Dahl, Assistant Attorney General
  *Denver, Colorado*

**Attorneys for Respondents:**
Colorado Education Association
Kris Gomez
  *Denver, Colorado*

McNamara Roseman & Shechter LLP
Todd McNamara
Mathew S. Shechter
  *Denver, Colorado*

National Education Association
Alice O'Brien
Philip A. Hostak
  *Washington, District of Columbia*

**Attorneys for Amicus Curiae Colorado Association of School Boards:**
Colorado Association of School Boards
Kady D. Lanoha
  *Denver, Colorado*

**Attorneys for Amici Curiae The Colorado Children's Campaign, Education Reform Now, and Ready Colorado:**
Squire Patton Boggs (US) LLP
Brent Owen
E. Rayner Mangum
  *Denver, Colorado*

**Attorneys for Amicus Curiae Colorado Succeeds:**
Holland & Hart LLP
Stephen G. Masciocchi
Jason A. Crow
Jessica J. Smith
  *Denver, Colorado*

**Attorneys for Amici Curiae Former Colorado Governors Bill Ritter, Jr., and Bill Owens:**
Foster Graham Milstein & Calisher, LLP
Chip G. Schoneberger
  *Denver, Colorado*

**Attorneys for Amicus Curiae Independence Institute:**
Kittredge LLC
Daniel D. Domenico

*Denver, Colorado*

**Attorneys for Amici Curiae Senators Michael Johnston, Owen Hill, Kevin Grantham, Vickie Marble, and Laura Woods; Former Senator John Morse; Representatives Paul Lundeen and Daniel Nordberg; and Former Representatives Terrance Carroll and Christine Scanlan:**
MRDLaw
Michael L. Francisco
  *Denver, Colorado*

**JUSTICE BOATRIGHT** delivered the Opinion of the Court.*

---

* This opinion was originally assigned to another Justice but was reassigned to Justice Boatright on November 3, 2017.

3

¶1 Teachers who work for Denver Public Schools ("DPS"), together with the Denver Classroom Teachers Association (collectively, "the teachers"), filed this suit, alleging that DPS invoked Senate Bill 10-191—which under certain circumstances allows a school district to place a nonprobationary teacher on unpaid leave—to remove hundreds of teachers from their positions in violation of both due process of law and the contracts clause of the Colorado Constitution. School District No. 1 and members of the Colorado Board of Education (collectively, "the District") moved to dismiss the suit, and the trial court granted that motion. A division of the court of appeals reversed, relying on our decisions interpreting predecessor statutes to the relevant, now-codified law—the Teacher Employment, Compensation, and Dismissal Act of 1990 ("TECDA")—and concluding due process violations occurred under those predecessor statutes. Masters v. Sch. Dist. No. 1, 2015 COA 159, ¶¶ 38, 40, __ P.3d __.

¶2 We granted certiorari[1] and now reverse. We hold that TECDA did not create a contractual relationship or vest nonprobationary teachers who are placed on unpaid leave with a property interest in salary and benefits.

---

[1] We granted certiorari to review these four issues:

1. Whether promises made in now-repealed tenure statutes passed in the 1950s and 1960s contractually bind the General Assembly, preventing it from altering the policy of "forced placement" for current schoolteachers.
2. Whether, in debating and voting on S.B. 191, the General Assembly satisfied due process for teachers who were previously entitled to "forced placement."
3. Whether, given this Court's modern contract clause precedent, the court of appeals erred in finding that a legislative contract exists that prevents the Legislature from amending the statute regulating public school teachers' employment.

## I. Facts and Procedural History

¶3 The Teacher Employment, Dismissal, and Tenure Act of 1967 ("TEDTA"), ch. 435, sec. 1, §§ 123-18-1 to -18, 1967 Colo. Sess. Laws 976, provided that a teacher who maintained continuous employment in the same school district for three academic years became tenured upon being retained for a fourth academic year. § 22-63-112(1), C.R.S. (1988).[2] It defined a "tenure teacher" as "any teacher who has acquired tenure status in a school district pursuant to law." § 22-63-102(11), C.R.S. (1988). Under TEDTA, a tenured teacher was "entitled to a position of employment as a teacher" under certain circumstances. § 22-63-115(1), C.R.S. (1988). Accordingly, a tenured teacher could be dismissed only for certain, enumerated reasons relating to cause. See § 22-63-116, C.R.S. (1988).

¶4 TEDTA laid out the procedure to dismiss a tenured teacher. This procedure included the filing of charges with the board of the employing school district, written notice to the teacher, entitlement to a hearing by an administrative law judge, and the opportunity for judicial review. See § 22-63-117(1)–(11), C.R.S. (1988). It also provided that a school district could cancel a tenured teacher's contract without penalty "when

---

4. Whether the court of appeals erred in holding that <u>Howell v. Woodlin School District</u>, 596 P.2d 56 (Colo. 1979) mandates that Plaintiffs-Respondents were due additional process beyond the legislative process.

[2] We cite to the 1988 Colorado Revised Statutes when discussing TEDTA because in that year, as today, the relevant provisions were codified in title 22, whereas in some earlier years they were codified elsewhere.

there is a justifiable decrease in the number of teaching positions." § 22-63-112(3), C.R.S. (1988).

¶5 TEDTA likewise provided for teacher transfer. A school district's chief administrative officer could transfer a teacher from one school to another within the school district, provided that the teacher was qualified for her new position:

> A teacher may be transferred upon the recommendation of the chief administrative officer of a school district from one school, position, or grade level to another within the school district, if such transfer does not result in the assignment of the teacher to a position of employment for which he or she is not qualified by virtue of academic preparation and certification and if, during the then current school year, the amount of salary of such teacher is not reduced except as otherwise provided in subsections (2) and (3) of this section.

§ 22-63-114(1), C.R.S. (1988). The receiving school could not refuse to accept a transferred teacher.

¶6 In 1990, the General Assembly supplanted TEDTA by enacting the Teacher Employment, Compensation, and Dismissal Act of 1990 ("TECDA"). Ch. 150, sec. 1, §§ 22-63-101 to -403, 1990 Colo. Sess. Laws 1117. In so doing, the General Assembly removed virtually all tenure-related language. Unlike its predecessor, TECDA did not define a "tenure teacher" or provide any "entitle[ment] to a position of employment as a teacher." Indeed, as we noted today in Johnson v. School District No. 1, 2018 CO 17, ¶ 4, __ P.3d __, TECDA used the word "tenure" only once.[3] TECDA instead created a distinction between nonprobationary and probationary teachers, defining the latter as

---

[3] Specifically, TECDA required that a committee to study teacher employment and compensation issues include as a member "[o]ne person from the business community knowledgeable about teacher employment and tenure issues." § 22-63-104(III)(E), C.R.S. (1990).

"a teacher who has not completed three full years of continuous employment with the employing school district and who has not been reemployed for the fourth year." § 22-63-103(7), C.R.S. (1990).

¶7 Despite removing tenure language, TECDA did retain some of TEDTA's provisions. Specifically, TECDA retained TEDTA's for-cause grounds for teacher dismissal, § 22-63-301, C.R.S. (1990), and its procedures to dismiss a teacher, with some differences not relevant for our purposes, see § 22-63-302(1)–(10), C.R.S. (1990). And TECDA retained TEDTA's transfer language. Compare § 22-63-114(1), C.R.S. (1988), with § 22-63-206(1), C.R.S. (1990).

¶8 But in 2010, the General Assembly enacted Senate Bill 10-191 ("SB 191"), which amended requirements for teacher contracts and the transfer process. Ch. 241, 2010 Colo. Sess. Laws 1053. SB 191 eliminated the practice of placing displaced teachers in schools without the consent of the recipient-school principal by providing—in the bill's sole alteration to section 22-63-206, which governs transfer—that "[n]othing in [section 22-63-206] shall be construed as requiring a receiving school to involuntarily accept the transfer of a teacher. All transfers to positions at other schools of the school district shall require the consent of the receiving school." § 22-63-206(5), C.R.S. (2017). SB 191 also provided that "each employment contract . . . shall contain a provision stating that a teacher may be assigned to a particular school only with the consent of the hiring principal and with input from at least two teachers employed at the school." § 22-63-202(2)(c.5)(I), C.R.S. (2017). SB 191 labels a teacher's assignment with consent of the recipient-school principal a "mutual consent assignment." E.g., § 22-63-202(2)(c.5)(IV).

¶9 SB 191 also provides procedures for teachers who are unable to secure mutual-consent assignments. Nonprobationary teachers[4] who were deemed effective during the prior school year, but who have not secured a mutual-consent assignment, become members of a "priority hiring pool," ensuring them the first opportunity to interview for a "reasonable number of available positions for which [they are] qualified in the school district." § 22-63-202(2)(c.5)(III)(A). But SB 191 does not promise an assignment. Instead, it provides that if a nonprobationary teacher fails to secure a position after the longer of twelve months or two hiring cycles, the teacher is placed on unpaid leave until he or she secures an assignment. § 22-63-202(2)(c.5)(IV).

¶10 Respondents here are DPS teachers who had achieved nonprobationary status but were nevertheless placed on unpaid leave.[5] In 2014, the teachers filed this action, alleging that SB 191 violates the contract and due process clauses of Colorado's constitution, Colo. Const. art. II, §§ 11, 25, and seeking declaratory and injunctive relief, as well as back pay and attorney's fees. In their amended complaint, the teachers allege that DPS has invoked the mutual-consent provisions of SB 191 "to remove hundreds of

---

[4] As we noted, before SB 191, a probationary teacher was "a teacher who has not completed three full years of continuous employment with the employing school district and who has not been reemployed for the fourth year." § 22-63-103(7), C.R.S. (1990). Today, a probationary teacher is "a teacher who has not completed three consecutive years of demonstrated effectiveness or a nonprobationary teacher who has had two consecutive years of demonstrated ineffectiveness, as defined by rule adopted by the general assembly pursuant to section 22-9-105.5." § 22-63-103(7), C.R.S. (2017). The teachers do not challenge this change.

[5] Respondents also include two DPS teachers who have achieved nonprobationary status and who have not been placed on unpaid leave, as well as the Denver Classroom Teachers Association, which represents nearly 3,000 teachers employed by DPS.

teachers from their teaching positions." The teachers describe the mutual-consent provisions as allowing DPS to "effectively discharge many of those teachers altogether without cause, notice, or hearing," including many "experienced educators with excellent professional records who had earned nonprobationary status under TECDA before they were discharged."

¶11 The District moved to dismiss the action under C.R.C.P. 12(b)(5), and the trial court granted that motion. A division of the court of appeals reversed. Masters, ¶ 40. The division below relied on our decisions holding that TEDTA—TECDA's predecessor—created a contract, and it therefore determined that TECDA also created contractual rights. Id. at ¶¶ 20–23. Hence, it concluded that the trial court should not have dismissed the contract clause claim. Id. at ¶ 24. On the due process claim, the division determined that sections 22-63-301 to -302 "create a constitutionally protected property interest in continued employment" for nonprobationary teachers. Id. at ¶ 28 (citing Feldewerth v. Joint Sch. Dist. 28-J, 3 P.3d 467, 471 (Colo. App. 1999)). Because placing teachers on unpaid leave is distinct from dismissal, the division recognized that through SB 191, the legislature had "exercised its plenary power to amend and diminish the property rights of certain nonprobationary teachers." Id. at ¶ 34. But relying on our decision in Howell v. Woodlin School District R-104, 596 P.2d 56 (Colo. 1979), overruled on other grounds by deKoevend v. Bd. of Educ., 688 P.2d 219 (Colo. 1984), the division concluded that the deprivation violated due process because nonprobationary teachers placed on unpaid leave have "their expectation of continued employment disappointed," and thus "have a due process right to a hearing." Id. at ¶ 38.

9

¶12 The District asked us to review the court of appeals' decision. We granted certiorari and now reverse.

## II. Standard of Review

¶13 We review a trial court's ruling on a motion to dismiss de novo, "applying the same standards as the trial court." Bly v. Story, 241 P.3d 529, 533 (Colo. 2010). In so doing, we "must accept all allegations of material fact [in the complaint] as true and view the allegations in the light most favorable to the plaintiff." Coors Brewing Co. v. Floyd, 978 P.2d 663, 665 (Colo. 1999).

¶14 But we do not defer to a complaint's legal conclusions. Instead, we interpret statutes and determine their constitutionality de novo. Justus v. State, 2014 CO 75, ¶ 17, 336 P.3d 202, 208. We presume that a statute is constitutional and uphold it "unless it is proved to be unconstitutional beyond a reasonable doubt." Id.

## III. Analysis

¶15 We first look to whether TECDA's language created a contract with the teachers such that the General Assembly was bound to maintain its forced-placement system. Considering that language in light of TECDA's predecessor statute, we hold that TECDA did not create a contractual relationship. Next, we turn to whether TECDA vests in teachers a property interest in salary and benefits. Because nonprobationary teachers who are placed on unpaid leave do not have a property interest in salary and benefits, as we concluded today in Johnson, ¶ 24, we conclude that the District has not violated the teachers' right to due process.

10

## A. TECDA Did Not Create a Contract

¶16    The Colorado Constitution provides that "[n]o . . . law impairing the obligation of contracts . . . shall be passed by the general assembly."  Colo. Const. art. II, § 11. Colorado's constitutional provision is "virtually identical" to the Contracts Clause in the United States Constitution, and Colorado courts apply the same three-part inquiry for claims brought under both: "(1) does a contractual relationship exist; (2) does the change in the law impair that contractual relationship; and if so, (3) is the impairment substantial?"  Justus, ¶¶ 18–19, 336 P.3d at 208.  If all three prongs are answered affirmatively, the impairment may nonetheless be constitutional if it is "reasonable and necessary to serve an important public purpose."  Id. at ¶ 19, 336 P.3d at 208 (quoting U.S. Tr. Co. of N.Y. v. New Jersey, 431 U.S. 1, 25 (1977)).

¶17    We presume that the legislature did not intend to bind itself contractually without a "clear indication of the legislature's intent to be bound."  Id. at ¶ 20, 336 P.3d at 208–09 (citing Nat'l R.R. Passenger Corp. v. Atchison, Topeka & Santa Fe Ry. Co., 470 U.S. 451, 465–66 (1985)).  To determine whether there is a clear indication of legislative intent to be contractually bound, we examine the language of the statute and the circumstances surrounding its enactment or amendment.  Id. at ¶ 21, 336 P.3d at 209.

¶18    The teachers rely heavily on State of Indiana ex rel. Anderson v. Brand, 303 U.S. 95, 104–05 (1938), in which the Supreme Court concluded that a state tenure law that made extensive reference to "tenure" and "indefinite contract[s]" evinced the legislature's intent to bind itself contractually.  The teachers maintain that the language in TECDA similarly indicates the General Assembly's intent to bind itself contractually

11

because it "expressly deals with the 'renewal and non-renewal of employment contract[s]' for probationary and post-probationary teachers, and uses the terms 'contract,' 'contracts,' or 'contractual' thirty times throughout its provisions." Answer Br. 23 (alteration in original) (citations omitted). We are not persuaded.

¶19 Nothing in TECDA provides a "clear indication of the legislature's intent to be bound" sufficient to overcome the presumption that the legislature did not intend to bind itself contractually. See Justus, ¶ 20, 336 P.3d at 209. Unlike the tenure law in Brand, TECDA provides for neither "tenure" nor "permanent teachers." 303 U.S. at 101–02 & n.14. Indeed, TECDA does not provide for "indefinite contract[s]" or provide that the contracts "remain in force unless succeeded by a new contract or canceled as provided in the act." Id. at 102. The Supreme Court specifically pointed to this language in concluding that there was contractual intent in Brand. Id. at 105. We too have recognized that this kind of durational language suggests the legislature's intent to create a contractual relationship. See Justus, ¶ 32, 336 P.3d at 211 (stating that defining "vested benefit" as "entitlement to a future monthly benefit" that is "'payable for the life of the retiree' clearly evidences an intent to be bound"). Conversely, we have also determined that the absence thereof suggests that the legislature did not intend to create such a relationship. See Colo. Springs Fire Fighters Ass'n, Local 5 v. City of Colo. Springs, 784 P.2d 766, 773 (Colo. 1989) (noting that the city ordinance at issue "contained no words of contract" and therefore did not evince any legislative intent to bind the city council). This case presents the latter scenario, because such durational language is entirely absent in TECDA.

12

¶20 The General Assembly's removal of key language from TECDA's predecessor statute confirms our conclusion. Whereas TEDTA made pervasive use of the term "tenure," TECDA omits it entirely. Compare §§ 22-63-101 and -102, C.R.S. (1988), with §§ 22-63-101 and -103, C.R.S. (1990). And whereas TEDTA provided that under certain circumstances a teacher is "entitled to a position of employment as a teacher," § 22-63-115(1), C.R.S. (1988), TECDA uses no such entitlement language.

¶21 The teachers' reliance on cases interpreting TECDA's predecessor statutes in which we found that their language evinced legislative intent to create a contract is therefore misplaced. As the trial court noted, the changes from previous iterations of the law indicate the General Assembly's intent not to be bound. Thus, our decisions regarding TECDA's predecessor statutes, including Maxey v. Jefferson County School District No. R-1, 408 P.2d 970 (Colo. 1965), and Marzec v. Fremont County, School District No. 2, 349 P.2d 699 (Colo. 1960), are irrelevant to the present case.

¶22 In sum, TECDA does not clearly indicate the General Assembly's intent to be bound by a contractual relationship. In fact, it indicates the opposite, as it is devoid of the entitlement and durational language that its predecessor statute contained. Accordingly, we hold that TECDA did not create a contractual relationship. Because no such relationship exists, we need not reach the remaining two prongs of the contract clause analysis. See Justus, ¶ 37, 336 P.3d at 213. We now consider whether a nonprobationary teacher who is placed on unpaid leave is deprived of a property interest without due process.

13

## B. Nonprobationary Teachers Who Are Placed on Unpaid Leave Do Not Have a Property Interest in Salary and Benefits

¶23    Colorado's constitution guarantees that "[n]o person shall be deprived of life, liberty or property, without due process of law."  Colo. Const. art II, § 25.  The teachers argue that a nonprobationary teacher who, pursuant to SB 191's paragraph (c.5), is placed on unpaid leave without a hearing is deprived of a property interest without due process.  We disagree.

¶24    In Johnson, also announced today, we concluded that nonprobationary teachers who are placed on unpaid leave do not have a property interest in salary and benefits under TECDA.  ¶ 24.  Because the state constitution protects property interests that are "defined by existing rules or understandings that stem from an independent source such as state law," Dove Valley Bus. Park Assocs. v. Bd. of Cty. Comm'rs, 945 P.2d 395, 401 (Colo. 1997) (quoting Webb's Fabulous Pharmacies, Inc. v. Beckwith, 449 U.S. 155, 161 (1980)), we looked in that case to TECDA's language.  We found it to be devoid of references to "tenure," unlike the language in TEDTA, TECDA's predecessor statute.  Johnson, ¶ 27.  The word "tenure," like similar entitlement language, evinces the existence of a state-law property interest.  See Cleveland Bd. of Educ. v. Loudermill, 470 U.S. 532, 538–39 (1985) (concluding that a statute "plainly" created a property interest when employees were "classified civil service employees, entitled to retain their positions during good behavior and efficient service, who could not be dismissed except" for certain enumerated reasons).  The General Assembly, by enacting TECDA in 1990, affirmatively removed that language, and we therefore concluded that the

14

legislature did not create a property interest in salary and benefits for nonprobationary teachers who are placed on unpaid leave. <u>Johnson</u>, ¶ 28.

¶25 Thus, regardless of the changes that SB 191 made to TECDA's teacher-transfer process, a nonprobationary teacher who is placed on unpaid leave pursuant to section 22-63-202(2)(c.5)(IV) has not suffered any violation of her right to due process. <u>See</u> <u>Williams v. White Mountain Constr. Co.</u>, 749 P.2d 423, 429 (Colo. 1988) (noting that "only those [property] rights which have already accrued as a result of state law or existing rules are protected" by the right to due process). The teachers have therefore failed to prove that SB 191 is unconstitutional beyond a reasonable doubt. <u>See</u> <u>Justus</u>, ¶ 17, 336 P.3d at 208.

## IV. Conclusion

¶26 We hold that TECDA did not create a contractual relationship or vest nonprobationary teachers who are placed on unpaid leave with a property interest in salary and benefits. Thus, we conclude that the General Assembly has not impaired a contractual obligation by enacting SB 191, and that the teachers have not suffered a violation of their right to due process and thus have failed to prove that SB 191 is unconstitutional beyond a reasonable doubt. We therefore reverse the judgment of the court of appeals and remand the case to that court with instructions to return the case to the trial court for dismissal.

15