24CA0707 Soltani v Colo PERA 07-03-2025

COLORADO COURT OF APPEALS

---

Court of Appeals No. 24CA0707
City and County of Denver District Court No. 23CV31175
Honorable J. Eric Elliff, Judge

---

Jason Soltani,

Plaintiff-Appellant,

v.

Colorado Public Employees' Retirement Association Board of Trustees,

Defendant-Appellee.

---

JUDGMENT AFFIRMED

Division I
Opinion by JUDGE KUHN
J. Jones and Moultrie, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced July 3, 2025

---

Jason Soltani, Pro Se

Fox Rothschild LLP, Caleb Durling, Spencer R. Allen, Denver, Colorado, for Defendant-Appellee

¶ 1     Plaintiff, Jason Soltani, appeals the district court's judgment upholding the Colorado Public Employees' Retirement Association (PERA) Board of Trustees' determination that he is not entitled to be placed on PERA benefit structure "Table 2."[1]  He also appeals the court's dismissal of his constitutional claims asserting violations of the equal protection and ex post facto clauses.  We affirm.

## I.     Background

¶ 2     According to PERA records, Soltani first began his PERA-covered employment in November 1998, which resulted in PERA membership starting on December 1, 1998.  He remained in that position until February 2001.  In October 2002, Soltani applied for a refund of his PERA membership account.

¶ 3     In the refund request document he signed, Soltani acknowledged that (1) he was forfeiting his right to any PERA benefits; (2) he had read the "Terminating PERA-Covered Employment" publication that informed him that he would "forfeit any benefit rights [he] may have had as a member"; and (3) he was

---

[1] The PERA benefit structure tables explain what retirement benefit a PERA member will receive — and whether that benefit is reduced — based on a combination of age and years of PERA-covered service.

1

solely responsible for all taxes and consequences of the decision to refund his account. However, Soltani later asserted that, at the time he refunded his account, a PERA representative advised that if he repurchased his membership account at a later date, "he would be placed back in the same position that he held before refunding his account." Soltani received $8,722 from his account refund.

¶ 4    In May 2004, the Colorado legislature passed Senate Bill 04-132. Ch. 214, 2004 Colo. Sess. Laws 695. The new legislation included section 24-51-602(1)(a.5), C.R.S. 2004 (effective July 1, 2005)[2], a statutory provision that resulted in a new PERA benefit structure table, "Table 4." That provision applied to any person who became a PERA member after July 1, 2005. In November 2005, Soltani returned to PERA-covered employment. Based on his start date, PERA placed him on the newly created Table 4. Less than a year later, the legislature again revisited the PERA statutes. On May 25, 2006, Senate Bill 06-235 was signed into law, enacting

---

[2] Because section 24-51-602(1)(a.5), C.R.S. 2004 (effective July 1, 2005), has since been amended, *see* Ch. 2, sec. 12, § 24-51-602(1)(a.5), 2010 Colo. Sess. Laws 11-12, this opinion refers to the version that became effective on July 1, 2005, throughout.

section 24-51-405(8), C.R.S. 2024. Ch. 259, 2006 Colo. Sess. Laws 1173. Subsection (8) applies to individuals, such as Soltani, who quit PERA-covered employment and refund their accounts but later recommence their PERA membership. *See* § 24-51-405(8). It clarifies that an individual in this situation has no rights associated with earlier membership. *Id.*

¶ 5    In November 2011, Soltani received a letter from PERA telling him that Table 2 dictated his retirement benefit eligibility. Soltani says that he based his retirement goals on Table 2. After saving money for a few more years, Soltani applied to repurchase prior service credit associated with his earlier membership in November 2019. PERA provided him with a "Purchasing Service Credit" brochure informing him that "purchasing service credit based on a rolled over/refunded [Defined Benefit] Plan account w[ould] not . . . [e]ntitle [him] to the benefit provisions associated with [his] previous period of membership." The service credit purchase agreement noted that he would be "reinstat[ing] a refunded PERA account" for the period of December 1, 1998, to February 28, 2001. Soltani completed the purchase the next year for $33,066.

3

¶ 6    In July 2021, Soltani contacted PERA about his retirement eligibility.  The PERA representative's call log indicates that "[Soltani] thought he would be put onto his original table when he [r]einstated his refunded time."  Soltani requested that PERA place him on Table 2 instead of Table 4, but PERA denied his request.  He then moved for administrative review, and PERA staff determined that he was correctly placed on Table 4.

¶ 7    Soltani appealed the staff determination to PERA's executive director, who issued an initial decision denying his request.  He then appealed the director's denial to PERA's administrative hearings panel, alleging detrimental reliance, promissory estoppel, and equitable estoppel.[3]  The panel held a hearing and adopted findings of facts and conclusions of law.  It denied his equitable claims and determined that Soltani was not entitled to be placed on Table 2.  Soltani appealed the panel's decision to the PERA Board, which held a second hearing and affirmed the panel's decision.  After exhausting his administrative remedies, Soltani filed a

---

[3] We note that Soltani does not seek a recission of his agreement to repurchase PERA service credits.  Instead, he seeks to keep the agreement and his service credits in place *and* have PERA place him on his preferred table.

4

complaint for judicial review under C.R.C.P. 106(a)(4). That complaint sought review of the Board's decision to deny his promissory estoppel claim and added his two constitutional claims.

¶ 8 PERA moved to dismiss the constitutional claims under C.R.C.P. 12(b)(5). The district court granted PERA's motion and dismissed both claims. Subsequently, the court heard argument on the remaining promissory estoppel claim and affirmed the Board's decision. Now, Soltani appeals the district court's dismissal of his constitutional claims and affirmance of the Board's decision.

## II. Analysis

¶ 9 Soltani contends that the district court erred by (1) dismissing his equal protection claim; (2) dismissing his ex post facto claim; and (3) denying his claim for promissory estoppel and affirming

PERA's determination that he was not entitled to placement on Table 2.  We address his claims in turn.[4]

### A.    Soltani's Constitutional Claims

¶ 10    Soltani argues that the district court erred by dismissing his constitutional claims under Rule 12(b)(5).  Specifically, he contends that (1) PERA's refusal to place him on Table 2 violates the equal protection clause of the federal and state constitutions, and (2) section 24-51-405(8) violates the federal and state ex post facto clauses.  We first set forth the proper standard of review before turning to each of his contentions.

### 1.    Standard of Review and Applicable Law

¶ 11    "We review a [district] court's ruling on a motion to dismiss de novo, 'applying the same standards as the [district] court.'"  *Sch.*

---

[4] Soltani appears pro se in this appeal.  Thus, we review the substance of his arguments to ensure he is not denied review of important issues if he is unable to articulate his arguments like a lawyer.  *See Jones v. Williams*, 2019 CO 61, ¶ 5.  But we apply the same law and procedural rules applicable to a party represented by counsel.  *See Gandy v. Williams*, 2019 COA 118, ¶ 8; *People v. Bergerud*, 223 P.3d 686, 697 (Colo. 2010) ("[T]he papers of pro se litigants are construed liberally." (citing *Marmolejo v. United States*, 196 F.3d 377, 378 (2d Cir. 1999) (per curiam))).  We won't, however, rewrite his arguments or act as an advocate on his behalf.  *See Johnson v. McGrath*, 2024 COA 5, ¶ 10.

6

*Dist. No. 1 v. Masters*, 2018 CO 18, ¶ 13 (quoting *Bly v. Story*, 241 P.3d 529, 533 (Colo. 2010)). "Accordingly, we accept all factual allegations in the complaint as true and view them in the light most favorable to the plaintiff." *Fry v. Lee*, 2013 COA 100, ¶ 17. However, "we are not required to accept as true legal conclusions that are couched as factual allegations." *Id.* "Dismissal is proper when the plaintiff's factual allegations cannot support a claim as a matter of law." *Graham v. Maketa*, 227 P.3d 516, 518 (Colo. App. 2010). Likewise, we review challenges to the constitutionality of statutes, including as-applied challenges, de novo. *Adams v. Sagee*, 2017 COA 133, ¶ 5.

¶ 12    "The Equal Protection Clause of the Fourteenth Amendment provides that no state shall 'deny to any person within its jurisdiction the equal protection of the laws.'" *People v. Castillo*, 2022 COA 20, ¶ 17 (quoting U.S. Const. amend. XIV, § 1). And "[a]lthough the Colorado Constitution does not contain an identical provision, it is well-established that a like guarantee exists within the constitution's due process clause, Colo. Const. [a]rt. II, [§] 25, and that its substantive application is the same insofar as equal

7

protection analysis is concerned." *Lujan v. Colo. State Bd. of Educ.*, 649 P.2d 1005, 1014 (Colo. 1982).

¶ 13    "The threshold inquiry in an equal protection analysis is whether persons who are similarly situated are subjected to disparate treatment by a governmental act." *Movitz v. Div. of Emp. & Training*, 820 P.2d 1153, 1155 (Colo. App. 1991). "Unless [the two groups of people] are similarly situated, the equal protection guarantee is not implicated." *Castillo*, ¶ 18 (quoting *Buckley Powder Co. v. State*, 70 P.3d 547, 562 (Colo. App. 2002)).

¶ 14    "The United States Constitution prohibits both Congress and the states from enacting ex post facto laws." *Aurora Pub. Schs. v. A.S.*, 2023 CO 39, ¶ 37 (citing U.S. Const. art. I, § 9, cl. 3, § 10, cl. 1). But "these [federal] ex post facto clauses apply only to criminal statutes." *Id.* (citing *Calder v. Bull*, 3 U.S. 386, 390 (1798)). However, in the civil context, "Colorado's constitution, article II, section 11 prohibits both ex post facto laws as well as the enactment of any law that is 'retrospective in its operation.'" *Id.* at ¶ 38.

¶ 15    An act violates the Colorado Constitution's ex post facto clause "if it 'takes away or impairs vested rights acquired under existing

laws, or creates a new obligation, imposes a new duty, or attaches a new disability, in respect to transactions or considerations already past.'" *Ficarra v. Dep't of Regul. Agencies*, 849 P.2d 6, 15 (Colo. 1993) (quoting *P-W Invs., Inc. v. City of Westminster*, 655 P.2d 1365, 1371 (Colo. 1982)).

### 2. Soltani Is Not Treated Differently From Similarly Situated Persons

¶ 16 Our equal protection analysis begins at the threshold question of whether Soltani's claim alleges disparate treatment between him and other similarly situated persons. *See Movitz*, 820 P.2d at 1155.

¶ 17 Soltani argues that he is treated differently from PERA members who did not refund their accounts. He asserts that he is similarly situated to these non-refunding members because his buyback placed him in the same actuarial position as them. And he argues that this creates an arbitrary classification between refunded and nonrefunded members.

¶ 18 We agree that sections 24-51-602(1)(a.5), 24-51-405(4), and 24-51-405(8) create classifications between different groups of people. They classify those who have refunded their PERA retirement accounts differently from those who have not, *see*

9

§ 24-51-405(4), and those who refunded their PERA retirement accounts before a specific date differently than those who refunded them after a specific date, *see* §§ 24-51-602(1)(a.5), -405(8). However, these groups are, by their very nature, not similarly situated. *See Dallman v. Ritter*, 225 P.3d 610, 634 (Colo. 2010). ("[T]he 'similarly situated' inquiry turns not on whether two entities are superficially alike, but on whether the two are situated or positioned similarly, thereby allowing one law to affect them differently.").

¶ 19     A person who refunded a PERA account is not similarly situated to someone who never refunded an account. *See* § 24-51-405(4). The nonrefunded class has continuously been in PERA-covered employment. By contrast, the refunded class expressly forfeits "[a]ll rights of membership and any future benefits associated with a member contribution account and matching employer contributions," § 24-51-405(4), and to regain member benefits, that group must go through the statutorily mandated reinstatement process, *see* § 24-51-503(1), C.R.S. 2024. Soltani was in the refunded class.

¶ 20    Likewise, a person who refunded an account, resumed employment, and repurchased service credits before July 1, 2005, is not similarly situated to someone who took the same actions after July 1.  We recognize that these two groups are superficially alike as they took the same actions, but they took those actions at different times.  Critically, the controlling law is different between the two time periods.  *Compare* §§ 24-51-405, C.R.S. 2005, *with* 24-51-405, C.R.S. 2006.  Thus, the two groups are not subject to one law that affected them differently.  Instead, they are subject to two distinct statutory frameworks with each group having its own statutory requirements for retirement eligibility.  Because each group is controlled by a different law, they are not similarly situated.  *See Dallman*, 225 P.3d at 634.

¶ 21    Conversely, under the relevant statutes, every person who is in Soltani's position — having earlier refunded an account but again commenced membership on or after July 1, 2005, but before January 1, 2007 — is treated the exact same way under the law.  *See* § 24-51-405(8).  As a result, Solani has not been treated differently than similarly situated individuals.

11

¶ 22 Accepting all factual allegations in his complaint as true and viewing them in the light most favorable to him, his equal protection claim fails at the threshold step. Thus, "it appears beyond a doubt that [Soltani] can prove no set of facts in support of his . . . claim which would entitle him . . . to relief," *Fry*, ¶ 18, and we discern no error in the district court's dismissal of his claim under Rule 12(b)(5), *see Fry*, ¶ 17.

### B. Section 24-51-405(8) Does Not Violate the Ex Post Facto Clause

¶ 23 Soltani contends that section 24-51-405(8) retroactively impairs his PERA membership benefits and therefore violates the ex post facto clause.[5] In support, Soltani asserts that (1) he had a right to his PERA retirement pension and placement on Table 2 as of November 2005 when he recommenced PERA-covered

---

[5] Soltani's briefing argues a violation of the United States and Colorado Constitutions. However, "the United States Supreme Court [has] held that [the federal] ex post facto clauses apply only to criminal statutes." *Aurora Pub. Schs. v. A.S.*, 2023 CO 39, ¶ 37 (citing *Calder v. Bull*, 3 U.S. 386, 390 (1798)). This is a civil case; therefore, we summarily dispose of his federal contention and instead focus on his state constitutional claim. *See id.* at ¶ 38 (stating that the Colorado Constitution's ex post facto clause applies to civil cases).

employment, and (2) section 24-51-405(8) unconstitutionally attached a new disability to that right.

¶ 24    Senate Bill 06-235 amended section 24-51-405 to add subsection (8):

> An individual who refunded his or her member contribution account pursuant to this section and again commences membership on or after July 1, 2005, but before January 1, 2007, whether or not the individual purchases all or part of the period associated with the refunded member contribution account, shall have no rights associated with membership prior to July 1, 2005, except as mandated by federal law, and such individual shall not be considered to have been a member, inactive member, or retiree on June 30, 2005.

*See* Ch. 259, sec. 8, § 24-51-405(8), 2006 Colo. Sess. Laws 1178-79.

¶ 25    It's true that this section took effect on May 25, 2006, which means that it applies to some events that occurred before its passage.  However, that does not render it inherently unconstitutional.  Instead, our analysis turns on whether section 24-51-405(8) "violates article II, section 11's prohibition [by] (1) impair[ing] a vested right; or (2) creat[ing] a new obligation,

impos[ing] a new duty, or attach[ing] a new disability with respect to transactions or considerations already past." *Aurora*, ¶ 40.

¶ 26     We first turn to Soltani's argument that he had a vested right in his refunded PERA retirement account. Under section 24-51-405(4), Soltani forfeited "[a]ll rights of membership and any future benefits associated with a member contribution account and matching employer contributions" when he refunded his PERA account in 2002. And both at the time he refunded his account and when he resumed PERA-covered employment in November 2005, section 24-51-503(1) said that "the service credit forfeited with a refund pursuant to the provisions of section 24-51-405 may be purchased upon the former member's resumption of membership and after completion of one year of earned service credit by such member."

¶ 27     This statute's plain language demonstrates that Soltani had the right to repurchase service credit only after a year of employment. Therefore, prior to November 2006, Soltani could expect only that he would be entitled to repurchase his prior service credit, not that he had a vested right in his refunded account. *See Nye v. Indus. Claim Appeals Off.*, 883 P.2d 607, 609 (Colo. App.

14

1994) ("To be vested, a right must consist of more than a mere expectation based on the anticipation of the continuance of a legal status, and in the usual case, no person has a vested right in any rule of law entitling that person to insist it shall remain unchanged for his or her future benefit.").

¶ 28     We view Soltani's factual allegations in the light most favorable to him.  Because the legislature enacted section 24-51-405(8) before he had a vested right to repurchase his PERA service credits, the statute did not impact a vested right or create unfairness by "changing the consequences of an act after that act has occurred." *City of Colorado Springs v. Powell*, 156 P.3d 461, 465 (Colo. 2007).[6]

¶ 29     Next, we turn to Soltani's argument that section 24-51-405(8) attached a new disability to his transaction by prohibiting him from reinstating his original membership date and his placement on Table 2.  But a statute violates the ex post facto clause in this regard only if it "attaches a new disability[] in respect to transactions or considerations already past."  *Ficarra*, 849 P.2d

---

[6] We recognize that the change in law affected Soltani's plan or expectation to retire after a certain period of time, but again, an expectation is not a vested right.

at 15 (quoting *P–W Invs.*, 655 P.2d at 1371).  As with his vested right argument, Soltani's assertion fails because he forfeited all rights associated with his PERA retirement account when he refunded it, and section 24-51-405(8) went into effect before he could (or did) repurchase his PERA service credits.  As a result, the statute did not attach "a new disability with respect to transactions or considerations already past."  *Aurora*, ¶ 40.  Thus, the statutory changes only affected a potential future transaction or expectation and did not violate the ex post facto clause.  *See id.* at ¶¶ 38-40.

¶ 30     Taking all of Soltani's asserted facts as true, his ex post facto claim fails as a matter of law.  Thus, we discern no error in the district court's dismissal of this claim under Rule 12(b)(5).  *See Fry*, ¶ 17.

## C.    Promissory Estoppel

¶ 31     Lastly, Soltani contends that the doctrine of promissory estoppel requires PERA to place him onto Table 2 instead of Table 4.  Based on this, he argues that the district court erred by affirming the Board's decision rejecting this argument and denying placement on Table 2.  We disagree.

### 1. Standard of Review and Applicable Law

¶ 32 "Our review under C.R.C.P. 106(a)(4) is limited to 'a determination of whether the [governmental] body or officer has exceeded its jurisdiction or abused its discretion, based on the evidence in the record before the defendant body or officer.'" *Langer v. Bd. of Comm'rs*, 2020 CO 31, ¶ 12 (quoting *Ad Two, Inc. v. City & Cnty. of Denver*, 9 P.3d 373, 376 (Colo. 2000)); *see* C.R.C.P. 106(a)(4)(I). In doing so, we sit in the same position as the district court and review de novo whether the agency abused its discretion. *Khelik v. City & Cnty. of Denver*, 2016 COA 55, ¶ 12; *see also Bd. of Cnty. Comm'rs v. O'Dell*, 920 P.2d 48, 50 (Colo. 1996) ("Review of a governmental body's decision pursuant to Rule 106(a)(4) requires an appellate court to review the decision of the governmental body itself rather than the district court's determination regarding the governmental body's decision."). An administrative agency abuses its discretion only when its decision isn't reasonably supported by any competent evidence in the record or is based on a misinterpretation or misapplication of the law. *Khelik*, ¶ 13.

¶ 33 No competent evidence means that the decision is "so devoid of evidentiary support that it can only be explained as an arbitrary

17

and capricious exercise of authority." *Langer*, ¶ 13 (quoting *Freedom Colo. Info., Inc. v. El Paso Cnty. Sheriff's Dep't*, 196 P.3d 892, 900 (Colo. 2008)). Thus, "[a]n action by an administrative agency is not arbitrary or an abuse of discretion when the reasonableness of the agency's action is open to a fair difference of opinion, or when there is room for more than one opinion." *Khelik*, ¶ 13.

¶ 34 "In reviewing the agency's construction [of a statute], we rely on the basic rules of statutory construction, affording the language of the provisions at issue their ordinary and common sense meaning." *City of Commerce City v. Enclave W., Inc.*, 185 P.3d 174, 178 (Colo. 2008). "Our primary task in interpreting statutes . . . is to give effect to the intent of the drafters, which we do by looking to the plain language." *Waste Mgmt. of Colo., Inc. v. City of Commerce City*, 250 P.3d 722, 725 (Colo. App. 2010). "If the language of the provision at issue is clear and the intent of the legislative body that enacted it may be discerned with certainty, we may not resort to other rules of statutory interpretation." *Colo. Health Consultants v. City & Cnty. of Denver*, 2018 COA 135, ¶ 13.

## 2. PERA Was Not Authorized to Place Soltani on Table 2

¶ 35 The district court determined that Soltani cannot prevail on his promissory estoppel claim because it seeks to require PERA to take an action that is not authorized by the law. We agree.

¶ 36 The Colorado Supreme Court has held that "[a] party cannot state a claim for relief under a theory of estoppel against a state or local government entity on the basis of an unauthorized action or promise." *Seeley v. Bd. of Cnty. Comm'rs*, 791 P.2d 696, 701 (Colo. 1990). Thus, we turn to controlling statutes and begin our analysis with whether Soltani's requested action was authorized.

¶ 37 When Soltani began his PERA-covered employment in 1998, there was one benefit structure for all non-state trooper members. *See* § 24-51-602(1), C.R.S. 1998. But after he left and before he returned to PERA-covered employment, the legislature passed Senate Bill 04-132, creating new benefits structures. *See* Ch. 214, 2004 Colo. Sess. Laws 695; § 24-51-602(1)(a.5). If Soltani had remained in PERA-covered employment starting in 1998, he would have been placed on Table 2, which allows an individual to retire with full benefits at age fifty with thirty years of service credit.

19

However, upon his return in 2005, he was placed on Table 4. That structure requires a fifty-year-old individual to have thirty-five years of service credit to retire with full benefits.

¶ 38     As noted above, Soltani forfeited his rights in PERA when he refunded his account in 2002. *See* § 24-51-405(4). And during his absence from PERA-covered employment, the legislature enacted the new PERA benefits structure in Senate Bill 04-132. The new structure required that "any person except a state trooper who becomes a member on or after July 1, 2005, and was not a member, inactive member, or a retiree on July 1, 2005" would be subject to the newly created retirement eligibility requirements.[7] § 24-51-602(1)(a.5). This statutory language plainly and unambiguously required PERA to place Soltani on Table 4 when he returned to PERA-covered employment in November 2005.

¶ 39     Soltani also argues that once he repurchased service credit, PERA should have placed him on Table 2 because he was entitled to benefits from the reinstated earlier employment date. But as set

---

[7] In his reply brief, Soltani argues that he was never on Table 4 and was always on Table 2. This argument conflicts with his opening brief, is unsupported by the record, and is refuted by section 24-51-602(1)(a.5).

forth above, section 24-51-405(8) bars an individual with a refunded PERA account who recommences membership "on or after July 1, 2005, but before January 1, 2007," from having any "rights associated with membership prior to July 1, 2005." This language prohibits PERA from taking the exact action that Soltani requests, namely moving him to the retirement table associated with his prior membership.

¶ 40    We acknowledge Soltani's argument that PERA sent him a letter incorrectly informing him that he was on Table 2 and that he relied on that letter. It does indeed appear that PERA sent him incorrect information. However, that letter and its incorrect information do not change the law. And we need look no further than the fact that there was no occasion since Soltani's November 2005 return to PERA-covered employment where it would have been legal for PERA to place him on Table 2, regardless of his repurchase of service credits. *See* §§ 24-51-602(1)(a.5), -405(4), -405(8). Therefore, Soltani's promissory estoppel claim is premised on an unauthorized action or promise, and his requested relief cannot be sustained. *See Seeley*, 791 P.2d at 701.

¶ 41    Thus, we discern no abuse of discretion in the Board's decision rejecting Soltani's claim.  And the district court did not err by affirming the Board's decision.

### III.    Disposition

¶ 42    The judgment is affirmed.

JUDGE J. JONES and JUDGE MOULTRIE concur.